UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OAK-JIN OH,

                Plaintiff,

   - against -

SOO BOK CHOI (a.k.a. Hye Sung Choi),
SUNG BOK CHOI, KYUNG BOK CHOI,
YOUNG IL CHOI, YOUNG JIN CHOI,
YOUNG MI CHOI, and THE PERSONAL
REPRESENTATIVE OF THE ESTATE OF
KI SOON LEE,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ AUG 03 2011 ★

BROOKLYN OFFICE

**COMPLAINT**

JURY TRIAL DEMANDED

**CV 11 - 3764**

**IRIZARRY, J.**

**GO, M.J.**

Plaintiff Oak-Jin Oh, by her attorneys the Asian American Legal Defense and Education Fund and Davis Polk & Wardwell LLP, for her complaint against defendants Soo Bok Choi (a.k.a. Hye Sung Choi), Sung Bok Choi, Kyung Bok Choi, Young Il Choi, Young Jin Choi, Young Mi Choi, and the personal representative of Ki Soon Lee's estate (collectively, the "Defendants" or "Choi Family") alleges as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff Oak-Jin Oh ("Ms. Oh") for the damages she suffered at the hands of her employers. In flagrant violation of federal and state law, the Choi Family, led by its patriarch, Defendant Soo Bok Choi, engaged in a fraudulent and illegal scheme, trafficking Ms. Oh into this country to work as their slave. For twelve years, the Choi Family forced Ms. Oh to work long hours without pay and without freedom to leave the residence where

the Choi Family lived.  Defendants subjected Ms. Oh to ridicule and insults, and
she was threatened with reputational harm, physical harm and death.  Ms. Oh
feared for her safety and her family's safety should she try to leave.  The Choi
Family mistreated Ms. Oh, and usually did not even give her a room or a bed to
sleep in.  The Choi Family also manipulated and coerced Ms. Oh through a
pattern of misrepresentations intended to trick her into continuing to work for
them without pay.

     2.      Ms. Oh now brings this action pursuant to the Thirteenth
Amendment to the United States Constitution and its enforcing statute, 18 U.S.C.
§ 1584, the Trafficking Victims Protection Act of 2000, as amended, 18 U.S.C.
§§ 1589, 1590, 1592 and 1595, the Fair Labor Standards Act of 1938, 29 U.S.C.
§§ 201–219, New York Labor Law §§ 190–199-a, 650–665, the Racketeering
Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, for common
law fraud and conspiracy to commit fraud.

## PARTIES

     3.      Plaintiff Oak-Jin Oh is a citizen of the Republic of Korea who
currently resides in New York.  During all times relevant to this action, Ms. Oh
was the Choi Family's employee, hired to cook, clean and perform other
household chores, as well as any other tasks any member of the Choi Family
asked her to perform, including work in the Defendants' Buddhist temple.  Ms.
Oh was required to do anything they asked, and although she was promised
wages for her work, she was never paid.  During all times relevant to this action,
the Choi Family required Ms. Oh to live with them.  Ms. Oh resided with the

2

Choi Family in Elmhurst, Little Neck, Bayside, Flushing and Whitestone, all in the state of New York.

4.      Defendant Soo Bok Choi, a Buddhist monk, was the head of the Choi Family and the leader of the scheme to exploit Ms. Oh. At all times relevant to this action, Defendant Soo Bok Choi was a resident of the state of New York. Defendant Soo Bok Choi recruited, harbored, transported and obtained Plaintiff for services. Defendant Soo Bok Choi forced Ms. Oh to work without pay. Defendant Soo Bok Choi was a knowing beneficiary of Plaintiff's services in violation of federal law. Defendant Soo Bok Choi was Ms. Oh's employer as that term is defined by the Fair Labor Standards Act and the New York State Labor Law. Defendant Soo Bok Choi hired Ms. Oh, instructed her to do work, controlled her schedule, and had the power to fire Ms. Oh.

5.      Defendant Sung Bok Choi is the brother of Defendant Soo Bok Choi. At all times relevant to this action, Defendant Sung Bok Choi was a resident of the state of New York. Defendant Sung Bok Choi recruited, harbored, transported and obtained Plaintiff for services. At all times relevant to this action, Defendant Sung Bok Choi lived with the Choi Family and forced Ms. Oh to work without pay. Defendant Sung Bok Choi was a knowing beneficiary of Plaintiff's services in violation of federal law. Defendant Sung Bok Choi was Ms. Oh's employer as that term is defined by the Fair Labor Standards Act and the New York State Labor Law. Defendant Sung Bok Choi instructed Ms. Oh to do work, supervised that work, and controlled her schedule.

3

6.     Defendant Kyung Bok Choi is the brother of Defendant Soo Bok Choi and Defendant Sung Bok Choi. At all times relevant to this action, Defendant Kyung Bok Choi was a resident of the state of New York. Defendant Kyung Bok Choi recruited, harbored, transported and obtained Plaintiff for services. For several years during the period relevant to this action, Defendant Kyung Bok Choi lived with the Choi Family and forced Ms. Oh to work without pay. Even after he stopped living with the Choi Family, he continued to be a knowing beneficiary of Plaintiff's services in violation of federal law. Defendant Kyung Bok Choi was Ms. Oh's employer as that term is defined by the Fair Labor Standards Act and the New York State Labor Law. Defendant Kyung Bok Choi instructed Ms. Oh to do work, supervised that work, and controlled her schedule.

7.     Defendant Young Il Choi is Defendant Soo Bok Choi's adult son. At all times relevant to this action, Defendant Young Il Choi was a resident of the state of New York. At all times relevant to this action, Defendant Young Il Choi lived with the Choi Family and forced Ms. Oh to work without pay. Defendant Young Il Choi recruited, harbored, transported and obtained Plaintiff for services and was a knowing beneficiary of Plaintiff's services in violation of federal law. Defendant Young Il Choi was Ms. Oh's employer as that term is defined by the Fair Labor Standards Act and the New York State Labor Law. Defendant Young Il Choi instructed Ms. Oh to do work, supervised that work, and controlled her schedule.

4

8.     Defendant Young Jin Choi is Defendant Soo Bok Choi's adult daughter. At all times relevant to this action, Defendant Young Jin Choi was a resident of the state of New York. At all times relevant to this action, Defendant Young Jin Choi lived with the Choi Family and forced Ms. Oh to work without pay. Defendant Young Jin Choi recruited, harbored, transported and obtained Plaintiff for services and was a knowing beneficiary of Plaintiff's services in violation of federal law. Defendant Young Jin Choi was Ms. Oh's employer as that term is defined by the Fair Labor Standards Act and the New York State Labor Law. Defendant Young Jin Choi instructed Ms. Oh to do work, supervised that work, and controlled her schedule.

9.     Defendant Young Mi Choi is Defendant Kyung Bok Choi's adult daughter. At all times relevant to this action, Defendant Young Mi Choi was a resident of the state of New York. For several years during the period relevant to this action, Defendant Young Mi Choi lived with the Choi Family and forced Ms. Oh to perform work without pay. Defendant Young Mi Choi recruited, harbored, transported and obtained Plaintiff for services and was at all times a knowing beneficiary of Plaintiff's services in violation of federal law. Defendant Young Mi Choi was Ms. Oh's employer as that term is defined by the Fair Labor Standards Act and New York State Labor Law. Defendant Young Mi Choi instructed Ms. Oh to do work, supervised that work, and controlled her schedule.

10.    Defendant Ki Soon Lee was the mother of Defendant Soo Bok Choi. At all times relevant to this action until her death in or around May of 2009, Defendant Ki Soon Lee was a resident of the state of New York. Defendant Ki

5

Soon Lee recruited, harbored, transported and obtained Plaintiff for services. At all times relevant to this action until her death in or about May 2009, Defendant Ki Soon Lee lived in the same residences as Ms. Oh and forced her to perform work without pay. Defendant Ki Soon Lee was Ms. Oh's employer as that term is defined by the Fair Labor Standards Act and New York State Labor Law. Defendant Ki Soon Lee instructed Ms. Oh to do work, supervised that work, and controlled her schedule. Pursuant to New York State Estates, Powers and Trusts Law § 11-3.2(a), Ms. Oh brings this suit against the personal representative of Defendant Ki Soon Lee's estate.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 8 U.S.C. § 1595 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the Fair Labor Standards Act pursuant to 29 U.S.C. § 216(b).

12.     Venue is vested in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### *Defendants Recruit, Transport and Harbor Ms. Oh*

13.     Ms. Oh's employment with the Choi Family began in January 1998. Ms. Oh first met Defendant Soo Bok Choi through an employment placement agency while she was living in Korea. Defendant Soo Bok Choi

6

claimed that he was seeking to hire a domestic worker to work in his temple and family residence in the United States. Ms. Oh agreed to travel to the United States to work for Defendant Soo Bok Choi and his family in exchange for a monthly wage of 1,300,000 Korean won (approximately $1,204 at current exchange rates).

14.     As part of the scheme to traffic Ms. Oh into the United States, Defendant Soo Bok Choi flew with Ms. Oh from Korea to Toronto, Canada, where Ms. Oh lived for a time with Defendant Soo Bok Choi and other Defendants. Ms. Oh was required to cook, clean and provide other domestic services while living in Canada. She was never paid for this work.

15.     After several weeks, at Defendant Soo Bok Choi's direction, the Choi Family smuggled Ms. Oh into the United States. Under the cover of night, Defendant Kyung Bok Choi and his two children, Defendant Young Mi Choi and Young Kyung Choi, brought Ms. Oh to a small boat, which they used to cross into New York State. Defendant Soo Bok Choi met the group and drove them to a residence in Elmhurst, New York. Upon information and belief, other members of the Choi Family entered the United States in the same manner, but on different days. Ms. Oh did not realize until years later that she had entered the country without authorization.

16.     After approximately one week in Elmhurst, the Choi Family moved Ms. Oh to a residence in Little Neck. The Defendants, along with Defendant Kyung Bok Choi's minor child, Young Kyung Choi, lived there and benefited from the services Ms. Oh provided to the Choi Family. The Choi

7

Family moved frequently, including to various residences in Bayside, Flushing and Whitestone. The Choi Family harbored Ms. Oh everywhere they lived.

**_Defendants Force Ms. Oh to Work for the Choi Family_**

17.　　Ms. Oh worked for the Choi Family every day of the week. She typically worked at least fourteen hours a day, although she often worked more as instructed. Ms. Oh was required to be on call twenty-four hours a day to respond to the Choi Family's needs at any time, day or night. She worked like this for twelve years, without a day off and without any true breaks.

18.　　All of the Defendants instructed Ms. Oh to do work and supervised Ms. Oh's work, although Defendants Soo Bok Choi, Sung Bok Choi and Ki Soon Lee had the most authority. Defendant Soo Bok Choi was the head of the household, and in his absence Defendant Sung Bok Choi took on that role.

19.　　The Choi Family did not allow Ms. Oh to come and go as she pleased. They did not permit Ms. Oh to leave the house without express permission from Defendants Soo Bok Choi, Sung Bok Choi or Ki Soon Lee, who only gave such permission when it was necessary for Ms. Oh to leave the house to run errands for the Choi Family such as buying groceries.

20.　　Ms. Oh's work each day included, but was not limited to, preparing meals for members of the Choi Family, setting and clearing the table, doing dishes, vacuuming and otherwise cleaning the house, watching and attending to the children and the elderly Defendant Ki Soon Lee, doing laundry for members of the Choi Family, and making the beds of members of the Choi Family. Ms. Oh was required to perform whatever other tasks the Choi Family

8

would ask of her.

21.     Ms. Oh's typical day began early in the morning because she was required to attend to the children when they woke up. She then prepared breakfast for the entire family. She then cleaned the breakfast dishes, did laundry and cleaned the house. She would next prepare lunch and then clean the lunch dishes. She spent a few hours a day caring for Defendant Ki Soon Lee (approximately twenty percent of her time) and took care of the children when they returned home from school. She then would set the table and prepare dinner for the Choi Family. Ms. Oh often had to prepare dinner four or five times each night, because members of the Choi Family all arrived at the house at different times. After dinner Ms. Oh would clear the table and clean the dinner dishes. She worked until late every night.

22.     Eventually, Defendant Kyung Bok Choi and his daughters, Defendant Young Mi Choi and Young Kyung Choi, moved out of the Choi Family's residence. Even so, they still benefited from the work that Ms. Oh performed for them, such as the food Ms. Oh prepared for them on a regular basis.

23.     As Defendant Ki Soon Lee's health deteriorated, the Choi Family forced Ms. Oh to spend more hours a day (up to forty percent of her time) caring for her. The Choi Family required Ms. Oh to bathe and prepare soft foods for Defendant Ki Soon Lee as well as sit with her and attend to her every need. Ms. Oh was required to assist Defendant Ki Soon Lee to use the bathroom and to change positions on her bed. The Defendants made Ms. Oh change Defendant Ki Soon Lee's clothing and sheets when she soiled herself.

9

24.     At all times relevant to this action, Defendants willfully and intentionally did not pay Ms. Oh any wages, overtime, or spread of hours for her work for the Choi Family. Further, upon information and belief, the Choi Family intentionally did not maintain proper employment records or follow other formalities of employment required by law.

### *Defendants Force Ms. Oh to Work for Temple Mitasa*

25.     In addition to performing domestic work in the residence, Defendants required Ms. Oh to work at their temple, Temple Mitasa, which was located at the same address as the Little Neck residence, for as long as the temple was in operation. The temple was open to the public, and all Defendants worked to operate the temple. For example, Defendant Soo Bok Choi led the temple, but Defendants Kyung Bok Choi and Sung Bok Choi placed advertisements for the temple in newspapers, bought supplies for the temple, and sold flowers and prayer cards. Defendants also helped set the temple up and greet visitors to the temple.

26.     The Defendants required Ms. Oh to clean the temple, prepare food and tea for visitors, and sell items to the temple's visitors. Ms. Oh was also required to do anything else she was asked to do with respect to the temple.

27.     The temple was open seven days each week, and was busy approximately four days a week. When the temple was busy, Defendants required Ms. Oh to work for nearly the entire day at the temple, in addition to the other work she was required to perform for the Choi Family. On these days, she worked day and night and into the early hours of the morning. She would only be

able to sleep briefly in the early morning, if at all.

28.     The temple operated from the time Ms. Oh came to the United States until approximately 2001. Upon information and belief, Temple Mitasa continued its operations thereafter in Seoul, Korea. At all times relevant to this complaint, Defendant Soo Bok Choi and the Choi Family dominated and controlled the temple and the temple was an alter ego of the Defendants.

29.     Defendants willfully and intentionally did not pay Ms. Oh any wages, overtime, or spread of hours for her work for Temple Mitasa. Further, upon information and belief, Defendants intentionally did not maintain proper employment records or follow other formalities of employment required by law.

### *Defendants Coerce Ms. Oh into Working*

30.     The Choi Family coerced Ms. Oh to work without pay by creating a climate of fear and intimidation in the household, essentially treating her as a prisoner under constant surveillance.

31.     The Choi Family's actions in creating this intimidating and controlling environment were all part of the same scheme, plan, or pattern intended to cause Ms. Oh to believe that she would suffer serious physical or financial harm if she did not continue to perform labor or services for the Choi Family. The Choi Family engaged in this scheme, plan, or pattern for the purpose of obtaining Ms. Oh's labor and services for free for the benefit of the Choi Family and their temple. This pattern continued throughout the relevant time period, and would have continued indefinitely had Ms. Oh not been able to escape.

11

32.     Ms. Oh lived in constant fear of physical violence from the Choi Family, especially Defendants Soo Bok Choi and Sung Bok Choi, who were prone to violent outbursts.

33.     Whenever Ms. Oh asked Defendant Soo Bok Choi when she would be paid, Defendant Soo Bok Choi responded with vicious verbal abuse and threats, including threats of abuse of process and credible threats that he would strike her and hire someone to kill her.

34.     Defendant Sung Bok Choi verbally abused and physically threatened Ms. Oh. He yelled at Ms. Oh when he was dissatisfied with her work. Defendant Sung Bok Choi became violent when he was drunk, and he was frequently drunk. He threw objects at Ms. Oh such as remote controls, videotapes, books, alcohol bottles and cups.

35.     Defendant Sung Bok Choi also told Ms. Oh that he could easily pay to have someone kill her.

36.     The Choi Family frequently threatened that they would report Ms. Oh to the immigration authorities and have her deported. They also coerced her into continuing to work for them by telling her she would never be able to get another job because of her immigration status.

37.     None of the other Defendants ever came to Ms. Oh's aid.

38.     Not only did Defendants fail to pay Ms. Oh for this work, but they failed to attend to her basic needs. Ms. Oh usually had to sleep on the floor, often in the basement, with nothing other than some old blankets. During the twelve years that Ms. Oh worked for the Choi Family, the Defendants never bought her

new clothes.  Other than the clothes she brought with her from Korea, the only

clothes Ms. Oh received were discarded clothes that Defendant Young Jin Choi

gave her from time to time.

  39.  The Choi Family also deprived Ms. Oh of medical care.  She was

never taken to a doctor, even when she was ill or injured.  For example, one time

after Defendant Kyung Bok Choi and his family moved out, Ms. Oh was injured

caring for Defendant Kyung Bok Choi's dog.  Neither Defendant Kyung Bok

Choi nor anyone else offered her medical care.  In addition, the Defendants

refused to let Ms. Oh see a dentist even though she had developed very painful

toothaches and asked for treatment.

### *Defendants Confine and Isolate Ms. Oh*

  40.  The Defendants restrained Ms. Oh with the intent to prevent her

from leaving by coercing her to live in their homes and restricting her ability to

leave or make contact with the outside world.

  41.  The Choi Family made Ms. Oh completely dependent on them so

that she would not be able to leave them.  Because they did not pay her, she was

unable to provide basic necessities for herself.  Because they hid her passport, she

had no way—and no means—to go back home to Korea.  Because they restricted

her contact with the outside world, Ms. Oh was generally unfamiliar with her

surroundings and had difficulty developing relationships with people who could

help her.  This was all part of the Defendants' scheme to extract labor and

services from Ms. Oh for their own benefit.

  42.  The Defendants maintained strict control over Ms. Oh's daily

activities and whereabouts.  She was not allowed outside without permission,

13

which she would only receive if her responsibilities required her to go outside, such as when she had to buy groceries for the Choi Family. Even when the Choi Family sent Ms. Oh outside to perform such tasks, they monitored her closely. If anyone thought she had been out too long, the Defendants interrogated her as to her whereabouts and whether she had spoken with anyone while outside. One of the ways the Defendants discouraged Ms. Oh from meeting or talking with anyone was by telling her lies about the people she met, and about how people in the United States generally could not be trusted, so that she would not want to talk to them again.

43.    The Choi Family did not allow Ms. Oh to use the telephone without their permission. When the Choi Family did permit her to use the telephone, they monitored her calls.

44.    Throughout the approximately twelve years that Ms. Oh worked for the Choi Family, the Defendants kept Ms. Oh's passport hidden from her, increasing her isolation and inability to escape the control of the Choi Family. So that Ms. Oh could leave Korea, Defendant Soo Bok Choi obtained a Korean passport for Ms. Oh, who did not have one. Defendant Soo Bok Choi then confiscated the passport. Throughout Ms. Oh's employment by the Choi Family, members of the Choi Family lied to Ms. Oh about the whereabouts of her passport, and such lies were calculated to isolate Ms. Oh and to lead her to believe that she could not escape. Upon information or belief, Defendant Young Il Choi was hiding the passport in his room.

14

***Defendants' False Promises of Compensation and Liberation***

45.     In addition to physical and psychological coercion, the Defendants engaged in a pattern of fraud and deception calculated to convince Ms. Oh to continue working for the Choi Family and not to pursue any recourse she had against the Choi Family.

46.     The Defendants' scheme of fraudulent misrepresentations also led Ms. Oh to believe that if she did not continue working for the Defendants, she would suffer serious financial harm because the Defendants would never pay her for her years of employment.  Without any other resources or income, Ms. Oh would not have been able to establish a life for herself if she had been able to leave the Choi Family.  This was yet another way that the Choi Family obtained Ms. Oh's labor.

47.     After years of working for the Choi Family without any pay, Ms. Oh began to inquire as to when she would be paid.  The Defendants assured her that they were trustworthy people and that they would pay her at the end of her employment, when she returned to Korea.  These promises were false when made, as the Defendants never had any intention of paying Ms. Oh or letting her return to Korea.  In reliance on the Defendants' misrepresentations, Ms. Oh continued to work for the Choi Family and stopped demanding, for a time, that she be paid.

48.     During one of Defendant Soo Bok Choi's trips to Korea, Ms. Oh told Defendants Sung Bok Choi and Ki Soon Lee that she wanted to return to Korea.  They both promised Ms. Oh that they would speak to Defendant Soo Bok Choi on her behalf and ask that he take her back to Korea.  Defendants Sung Bok

15

Choi and Ki Soon Lee had no intention of fulfilling their promises to Ms. Oh. When Defendant Soo Bok Choi returned, no one discussed Ms. Oh's request to return to Korea with him. Upon information or belief, her request was not communicated to Defendant Soo Bok Choi because Defendants believed that her departure would disrupt the Choi Family.

49.     In approximately 2008, Ms. Oh approached Defendant Soo Bok Choi directly about her desire to return to Korea. Defendant Soo Bok Choi said that she could return to Korea after his brother, Defendant Sung Bok Choi, got married in about a year. After Defendant Sung Bok Choi married, Ms. Oh asked Defendant Soo Bok Choi if she could return to Korea, but Defendant Soo Bok Choi responded with vicious verbal assaults and threats.

50.     When Ms. Oh repeated her request to leave some time later, Defendant Soo Bok Choi assured her that he would take her back to Korea the following year. When the time came, Ms. Oh asked to return to Korea, and Defendant Soo Bok Choi again responded with verbal assaults and threats. He did not take her to Korea. Like the other misrepresentations, Defendant Soo Bok Choi's lies were calculated to induce and did induce Ms. Oh to keep working for the Choi Family.

51.     All of these statements were false when made, as Defendants never had any intention of letting Ms. Oh leave their employment or leave the country and never had any intention of paying her. Defendants made these misrepresentations in furtherance of their scheme to obtain Ms. Oh's labor.

16

52.     Ms. Oh relied on the false statements made by members of the Choi Family that she would eventually be paid and could return to Korea, and as a result of this reliance continued to work without being paid any wages or compensation.  These misrepresentations caused Ms. Oh to believe that if she did not keep working for the Choi Family, she would never receive all the back pay and other wages she was owed at the time.  This represented a serious harm to Ms. Oh that she had tried to avoid by continuing to work for Defendants.  Because she had no resources other than this promised money, Ms. Oh would not have been able to make a life for herself unless she kept working in the hopes of being paid. In addition, these misrepresentations were intended to, and did, keep Ms. Oh dependent on the Choi Family and were a means by which the Choi Family obtained Ms. Oh's labor.

53.     The Choi Family's conduct prevented Ms. Oh from asserting her rights.  Their continuing fraud and psychological coercion prevented her from escaping or seeking help until, after nearly twelve years of living under the Choi Family's control, Ms. Oh was finally able to escape.  The Choi Family's conduct and misrepresentations induced Ms. Oh to continue working, to forbear seeking help to recover wages or asserting other rights.

54.     Defendants intentionally failed to post employment notices, despite operating a place of employment.

55.     Ms. Oh seeks compensation for all of her injuries as well as other relief afforded to her by law.  Ms. Oh has sustained significant damages, including severe emotional distress and economic loss.

17

## COUNT 1
### INVOLUNTARY SERVITUDE:
### THIRTEENTH AMENDMENT AND 18 U.S.C. §§ 1584, 1595

56.     Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

57.     Plaintiff brings a claim for relief under the Thirteenth Amendment of the U.S. Constitution, and 18 U.S.C. § 1584, both of which prohibit involuntary servitude.

58.     Defendants knowingly and willfully held Plaintiff in the condition of involuntary servitude, forcing her to work long hours against her will and without payment.

59.     Defendants knowingly and willfully forced Plaintiff to work for them by the use of threats of physical restraint and by the threat of coercion through the legal process.

60.     Defendants' restraint, coercion, abuse and intimidation caused Plaintiff to reasonably believe she had no choice but to work for Defendants.

61.     Through such actions, Defendants directed, assisted, conspired and acted in concert with each other to create and enforce a system of involuntary servitude prohibited by the Thirteenth Amendment of the U.S. Constitution and 18 U.S.C. § 1584.

62.     As a direct and proximate result of Defendants' actions, Plaintiff sustained significant damages, including severe emotional distress and economic losses.  Plaintiff is entitled to recover damages in an amount to be proven at trial, including punitive damages, attorneys' fees and costs.

## COUNT 2
## FORCED LABOR:
## 18 U.S.C. §§ 1589, 1595

63.     Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

64.     Defendants obtained or provided Plaintiff's labor or services in violation of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589.

65.     Defendants did so knowingly and willfully through the following prohibited means:

       (a)     The use of force, threats of force, physical restraint, and threats of physical restraint to Plaintiff.

       (b)     Threats of serious harm to Plaintiff.

       (c)     Threats of abuse of the law or legal process.

       (d)     A scheme intended to cause Plaintiff to believe that, if she did not perform such labor or services, she would suffer serious harm or physical restraint.

66.     As a direct and proximate result of Defendants' actions, Plaintiff sustained significant damages, including severe emotional distress and economic losses. Plaintiff is entitled to recover damages in an amount to be proven at trial, including punitive damages, attorneys' fees and costs.

## COUNT 3
## TRAFFICKING:
## 18 U.S.C. §§ 1590, 1595

67.     Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

68.     Defendants recruited Plaintiff in Korea and transported her into the United States, where they harbored her for the next twelve years.

69.     Defendants obtained her labor and services without compensation.

70.     Defendants knowingly and willfully committed these acts.

71.     Defendants committed these acts in order to obtain Plaintiff's labor and services in violation of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1590.

72.     As a direct and proximate result of Defendants' actions, Plaintiff sustained significant damages, including severe emotional distress and economic losses.  Plaintiff is entitled to recover damages in an amount to be proven at trial, including punitive damages, attorneys' fees and costs.

## COUNT 4
## DOCUMENT SERVITUDE:
## 18 U.S.C. §§ 1592, 1595

73.     Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

74.     Defendants knowingly and willfully concealed, removed, confiscated and possessed Ms. Oh's actual passport.  Defendants did so to prevent Ms. Oh from leaving so they could benefit from her continued work for them.

75.     Defendants concealed Plaintiff's passport with the intent to violate and in the course of violating the federal forced labor, trafficking and involuntary servitude codes of the Trafficking Victims Protection Act.

76.     As a direct and proximate result of Defendants' actions, Plaintiff sustained significant damages, including severe emotional distress and economic

20

losses.  Plaintiff is entitled to recover damages in an amount to be proven at trial, including punitive damages, attorneys' fees and costs.

### COUNT 5
### FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ("RICO") ACT:
### 18 U.S.C § 1962(c)

77.       Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

78.       Plaintiff is a "person" with standing to sue pursuant to 18 U.S.C. § 1964(c).

79.       Each Defendant is a "RICO person" pursuant to 18 U.S.C. § 1961(3).

80.       The Choi Family constitutes a RICO enterprise pursuant to 18 U.S.C. § 1961(4).  Defendants were related to each other, lived together, and cooperated with each other.  All Defendants lived in the same residence as Plaintiff for all or some of the time relevant to this action.  This group of family members constitutes an association-in-fact enterprise pursuant to 18 U.S.C. § 1961(4).  This enterprise engaged in legitimate family activities, such as living together and providing for each other.  This enterprise also engaged in the illegitimate activity of obtaining Plaintiff's labor and services for free and through coercion, in violation of federal and state law.  The enterprise engaged in a twelve-year long scheme to harbor Ms. Oh in the United States and force her to work without pay.  Defendants' enterprise received substantial benefits from Plaintiff's free services.

21

81.     Temple Mitasa also constituted a RICO enterprise pursuant to 18 U.S.C. § 1961(4). The Temple was located in Defendants' residence and was operated by the Defendants, who also forced Plaintiff to work there. The Temple was open to the public and engaged in the legitimate activity of providing services to worshippers. The Temple also engaged in the illegitimate activity of Plaintiff's labor and services for free and through coercion, in violation of federal and state law. During the Temple's period of operation, Defendants forced Plaintiff to work there without pay. The Temple received substantial benefits from Plaintiff's free services.

82.     Together, these enterprises worked as continuous units to procure services from Plaintiff by unlawful means. By participating in both enterprises, Defendants participated in the scheme to obtain Plaintiff's labor and services for free, either by posing threats of physical violence, abusing Plaintiff verbally, restricting Plaintiff from leaving the residences without permission, monitoring Plaintiff's whereabouts and her phone calls, or by ordering Plaintiff to undertake certain tasks.

83.     At all times relevant to this action, Defendants' conduct affected interstate commerce. Defendants trafficked Plaintiff into the United States for the purpose of obtaining her labor for free. Additionally, Defendants purchased goods and supplies from interstate commerce and obtained Plaintiff's labor and services while failing to pay Plaintiff minimum wage under state and federal law.

84.     Defendants knowingly and willfully conducted the affairs of both enterprises through a pattern of acts of racketeering activity as defined in 18

U.S.C. § 1961(1)(B), by committing acts that are chargeable under the following federal statutes:

        (a)     Enticement into slavery in violation of 18 U.S.C. § 1583;

        (b)     Holding Plaintiff in a condition of involuntary servitude in violation of 18 U.S.C. § 1584;

        (c)     Forced labor in violation of 18 U.S.C. § 1589;

        (d)     Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1590;

        (e)     Unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1592.

85.     Defendants knowingly and willfully conducted the affairs of both enterprises through a pattern of acts of racketeering activity as defined in 18 U.S.C. § 1961(1)(F) by transporting and harboring aliens in violation of 8 U.S.C. § 1324 for financial gain, conduct which is chargeable under the Immigration and Nationality Act, namely transporting and harboring aliens in violation of 8 U.S.C. § 1324.

86.     Defendants knowingly and willfully conducted the affairs of both enterprises through a pattern of acts of racketeering activity as defined in 18 U.S.C. § 1961(1)(A) by committing or threatening to commit murder and kidnapping, conduct which is chargeable under New York Penal Laws §§ 125.27 and 135.20 and punishable by more than one year in prison.

23

87.     Defendants' conduct over a twelve-year period constitutes a pattern of racketeering pursuant to 18 U.S.C. § 1961(5). The racketeering activity began in 1998 when Defendants smuggled Plaintiff into the United States, and continued for the entire length of Defendants' scheme, as Defendants physically threatened, psychologically abused, and materially misled and defrauded Plaintiff so that she would remain under their control. The racketeering activity would have continued indefinitely had the Plaintiff not escaped Defendants' control.

88.     The Plaintiff is the victim of the Defendants' scheme. Defendants' racketeering activity caused the Plaintiff to work long hours without wages or compensation and under abusive conditions. As a direct and proximate result of Defendants' scheme to extract free labor and services from Ms. Oh by engaging in racketeering activity, Plaintiff suffered significant economic injury, and is entitled to recover treble damages for that injury, as well as the cost of this suit and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT 6
## CONSPIRACY TO VIOLATE THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT: 18 U.S.C § 1962(d)

89.     Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

90.     Defendants conspired with each other to violate 18 U.S.C. § 1962(c), as specifically described above, in violation of 18 U.S.C. § 1962(d).

91.     As described above, each Defendant planned, sanctioned, and facilitated the acts that led to the conducting of the affairs of the Choi Family and Temple Mitasa through a pattern of racketeering activity.

92.     The object of the conspiracy was to conduct the affairs of the Choi Family and Temple Mitasa through a pattern of racketeering activity, and thus to obtain Plaintiff's labor and services for free.

93.     As described above, each Defendant knowingly acted in furtherance of the conspiracy by recruiting and transporting Ms. Oh from Korea to the United States, directing physical threats and verbal and psychological abuse at her, concealing her from detection by restricting and monitoring her whereabouts at all times, misleading her about the location of her passport, and ordering her to perform specific tasks without payment.

94.     As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered significant economic injury, and is entitled to recover treble damages for that injury as well as the cost of this suit and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT 7
### FEDERAL MINIMUM WAGE:
### 29 U.S.C. §§ 201–219

95.     Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

96.     Plaintiff was employed by Defendants for twelve years.

97.     Defendants failed to pay Plaintiff federal minimum wage during the course of her employment.

98.     29 U.S.C. § 206(a) provides that any employee engaged in commerce shall be paid wages at a rate not less than $5.15 per hour during Plaintiff's period of employment from on or about January 1998 until December 31, 2004.

25

99.     29 U.S.C. § 206(a) provides that any employee engaged in commerce shall be paid wages at a rate not less than $7.25 per hour during Plaintiff's period of employment from July 24, 2009 until she escaped from the Choi Family.

100.     Defendants' intentional failure to pay minimum wage violates the Fair Labor Standards Act, 29 U.S.C.§§ 201, et seq. and federal regulations.

101.     Plaintiff is entitled to an award of unpaid wages.

**COUNT 8**
**NEW YORK MINIMUM WAGE:**
**NEW YORK LABOR LAW §§ 190–199-a, 650–665**

102.     Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

103.     Plaintiff was employed by Defendants for twelve years.

104.      Defendants failed to pay Plaintiff New York minimum wage during the course of her employment.

105.     New York Labor Law § 652 provides that any employee engaged in commerce shall be paid wages at a rate not less than $6.00 per hour during Plaintiff's period of employment from January 1, 2005 until December 31, 2005.

106.     New York Labor Law § 652 provides that any employee engaged in commerce shall be paid wages at a rate not less than $6.75 per hour during Plaintiff's period of employment from January 1, 2006 until December 31, 2006.

107.     New York Labor Law § 652 provides that any employee engaged in commerce shall be paid wages at a rate not less than $7.15 per hour during Plaintiff's period of employment from January 1, 2007 until July 23, 2009.

108.    Defendants' intentional failure to pay minimum wage violates the New York Labor Law, N.Y. Lab. L. §§ 650 et seq.

109.    Plaintiff is entitled to an award of unpaid wages.

## COUNT 9
## NEW YORK STATE OVERTIME:
## NEW YORK LABOR LAW §§ 190–199-a, 650 et seq.

110.    Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

111.    Plaintiff was employed by Defendants for twelve years.

112.    Defendants failed to pay the Plaintiff overtime for the hours she worked in excess of forty-four hours per week.

113.    Defendants' intentional failure to pay overtime violates the New York Labor Law, N.Y. Lab. Law. §§ 650 et seq. and supporting regulations.

114.    Plaintiff is entitled to an award of unpaid wages.

## COUNT 10
## NEW YORK SPREAD OF HOURS

115.    Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

116.    Plaintiff was employed by Defendants for twelve years and worked more than ten hours every day.

117.    Defendants failed to pay Plaintiff any spread-of-hours compensation.

118.    Defendants intentionally failed to pay Plaintiff New York spread-of-hours pay in violation of New York Labor Law, N.Y. Lab. L. §§ 650 et seq. and supporting regulations.

27

119.    Plaintiff is entitled to an award of unpaid spread of hour compensation.

## COUNT 11
## COMMON LAW FRAUD

120.    Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

121.    Defendants intentionally made material misrepresentations and material omissions to their employee, the Plaintiff. These misrepresentations that Defendants would pay the Plaintiff and that she could ultimately return to Korea were made in order to induce the Plaintiff to keep working for the Choi Family.

122.    Defendants made these material misrepresentations, which they knew to be false, for the purpose of inducing Plaintiff's continued work for the Choi Family. Contrary to their promises, the Defendants had no intention of ever paying the Plaintiff or letting her leave their control.

123.    Plaintiff justifiably relied on Defendants' misrepresentations in continuing to work for the Choi Family because she believed if she did so, she would be paid and could return to Korea.

124.    Plaintiff suffered significant injury as a result of Defendants' fraud, including severe emotional distress and economic loss.

125.    Defendants must be made to pay punitive damages in an amount sufficient to punish them and deter others from similar fraudulent and illegal behavior. Defendants' actions were gross, wanton and willful behavior and directed at the public generally.

28

## COUNT 12
## CONSPIRACY TO COMMIT FRAUD

126.   Plaintiff re-alleges and incorporates all prior paragraphs above as if fully set forth herein.

127.   Defendants conspired with each other to perpetrate fraud on the Plaintiff.  Defendants' conspiracy successfully effectuated that fraud, causing Plaintiff to work for Defendants for a twelve-year period without receiving any compensation.

128.   Defendants personally took steps in furtherance of the conspiracy, including by leading Plaintiff to believe that she would suffer harm at the hands of certain Defendants if she did not continue to provide her services.  Defendants ratified the conspiratorial scheme by taking the benefit of Plaintiff's services.

### JURY DEMAND

129.   Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

### RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests that this Court enter an order and judgment awarding her:

a)   compensatory damages according to proof;

b)   unpaid wages, including minimum wages, overtime pay and spread-of-hours pay, and liquidated damages, penalties and interest thereon;

c)   treble damages;

d)   punitive damages;

e)   attorneys' fees and costs;

    f)   prejudgment and postjudgment interest and;

    g)   such other and further relief as this Court deems just and proper.

Dated:  August 3, 2011

                Respectfully submitted,

                Alicia Llosa Chang
                DAVIS POLK & WARDWELL LLP
                450 Lexington Avenue
                New York, New York 10017
                (212) 450-4000
                alicia.chang@davispolk.com

                -and-

                Ivy Suriyopas
                ASIAN AMERICAN LEGAL DEFENSE AND
                EDUCATION FUND
                99 Hudson Street, 12th Floor
                New York, New York 10013
                (212) 966-5932
                isuriyopas@aaldef.org

                *Attorneys for Plaintiff*