| | |
|---|---|
| New York | Paris |
| Menlo Park | Madrid |
| Washington DC | Tokyo |
| São Paulo | Beijing |
| London | Hong Kong |

# Davis Polk

**Alicia Llosa Chang**

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

212 450 4792 tel
212 701 5792 fax
alicia.chang@davispolk.com

July 31, 2015

Re: <u>Oak-Jin Oh v. Soo Bok Choi, et al.</u>, No. 11 CV 3764 (DLI) (MDG)

<u>By Electronic Filing</u>
Honorable Marilyn D. Go
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Go:

We represent Plaintiff Oak-Jin Oh in the above-referenced matter and write to supplement plaintiff's April 13, 2015 request for default damages against Kyung Bok Choi ("defendant") (Dkt. No. 145) following our June 30, 2015 telephonic conference with the Court.

During that conference, the Court raised several issues relating to plaintiff's April 13 request, including (1) whether plaintiff may recover damages under the Trafficking Victims Protection Act, Pub. L. No. 106-386, Div. A, § 101, 114 Stat. 1464 (2000) (codified as amended at 22 U.S.C. §§ 7101-7112 and amending Chapter 77 of Title 18, United States Code (§§ 1581-1596)), ("TVPA") prior to December 19, 2003, when a private cause of action was established, and (2) whether certain of her claims are barred by applicable statutes of limitations. Although plaintiff concedes that her TVPA claim could first be brought as a civil claim only in 2003, plaintiff respectfully submits this does not affect the calculation of her damages, as damages and penalties flowing from other causes of action total $2,896,282.76. Under Second Circuit law (<u>see</u> Point III, <u>infra</u>), this Court should not credit any now abandoned affirmative defenses, including statutes of limitations. Even if the Court were to disregard this authority and consider the statutes of limitations, the allegations of the amended complaint establish circumstances under which this Court should deem the statutes equitably tolled.

I.   **Background**

As the Court is well aware, the defendant, though properly served and represented by counsel, stopped participating in this litigation and failed to appear for numerous depositions.  His November 12, 2012 deposition was canceled at the last minute, for which he was sanctioned in the amount of $520.00.  This sanction has not been paid. (<u>See</u> Dkt. 57.)  The defendant also failed to appear for his February 11, 2013 deposition (<u>see</u> Dkt. 65 (Feb. 27, 2013 status report)). Plaintiff moved for additional sanctions against him in the amount of $1,070.00 on April 5, 2013

(Dkt. 66). This motion remains pending. Plaintiff renews her request that the Court order Kyung Bok Choi to pay these costs, as required by Rule 37(d).

On March 11, 2014, plaintiff moved for entry of default judgment against Kyung Bok Choi. Reviewing the history of defendant's failures to participate in the litigation, despite numerous admonitions, this Court issued a Report and Recommendation granting plaintiff's motion (Dkt. 126), which was adopted by Judge Irizarry on February 18, 2015 (Order Adopting Report and Recommendations dated February 18, 2015). Kyung Bok Choi's answer was stricken and plaintiff's motion for default judgment was granted. Plaintiff served a copy of the order upon Kyung Bok Choi at his last known address. (Dkt. 142). The only item remaining in this action is the entry of an award of damages and costs, which will bring an end to this litigation.

**II.    Defendant Is Deemed to Have Admitted Liability on Each Claim**

   A.    *Effect of Default on Liability*

On February 18, 2015, the Court ordered that defendant's answer be stricken and granted plaintiff's motion for a default judgment. Kyung Bok Choi is thus "deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability." Finkel v. Triple A. Grp., Inc., 708 F. Supp. 2d 277, 280 (E.D.N.Y. 2010); Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (same).

Kyung Bok Choi is also deemed to have admitted that plaintiff's "damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in the complaint violated the laws upon which a claim is based and caused injuries as alleged." Jarvis v. N. Am. Globex Fund, L.P., 823 F. Supp. 2d 161, 165 (E.D.N.Y. 2011).

   B.    *Scope of Defendant's Admissions*

As a result of his default, Kyung Bok Choi has admitted his liability on the causes of action made out against him in the complaint, as follows:

- **Involuntary Servitude** (13th Amendment and 18 U.S.C. §§ 1584, 1595), **Forced Labor** (18 U.S.C. §§ 1589, 1595), and **Trafficking** (18 U.S.C. §§ 1590, 1595), based on plaintiff's allegations that Kyung Bok Choi smuggled her into the United States for the purpose of obtaining her labor and services and proceeded to transport her and harbor her for the next twelve years. Plaintiff also alleges that Kyung Bok Choi participated in a scheme to restrain, coerce, abuse and intimidate the plaintiff in order to cause her to believe that she had no choice but to work for Defendants. The complaint alleges (and defendant therefore is deemed to have admitted) that this conduct—including defendant's direct involvement—persisted even after Kyung Bok Choi no longer resided with plaintiff on a permanent basis, and certainly well after his initial act of trafficking her over the border. (Am. Compl. ¶¶ 15, 25, 35, 36, 45-51.)

- **RICO** (18 U.S.C. § 1962(d)), based on plaintiff's allegations that defendant participated in the Choi Family RICO enterprise, engaged in the predicate acts of trafficking in violation of 18 U.S.C. § 1590, holding plaintiff in a condition of involuntary servitude in violation of 18 U.S.C. § 1584 and forced labor in violation of 18 U.S.C. § 1589. Plaintiff alleges that

this RICO enterprise, in which defendant participated, continued to cause her injury through 2010. (Am. Compl. ¶¶ 89-108.)[1]

- **Federal and State Wage and Hour** (29 U.S.C. §§ 201-219; N.Y. Labor Law §§ 190-199-a, 650-665), based on plaintiff's allegations that Kyung Bok Choi was her employer and continued to direct her labor even after he stopped residing with her on a permanent basis. (E.g., Am. Compl. ¶¶ 6, 25, 46.) By his default, the defendant has admitted liability as plaintiff's employer both while he lived in the Choi residence and after he moved out.

- **Conspiracy to Commit Fraud**, on the basis of plaintiff's allegations that defendant conspired with other members of the Choi family to lead plaintiff to believe that she would be paid for her services if she stayed with the Choi family over the years. (Am. Compl. ¶¶ 52-61, 141-43.)

Plaintiff's April 13, 2015 letter sets out the categories of damages recoverable under each of her causes of action, which all flow from the default,[2] as well as the calculation of the damages. (Dkt. No. 145.)

All of plaintiff's claims have a compensatory damage component. The simplest and most conservative approach is to consider plaintiff's unpaid wages to be the measure of her injury

---

[1] During the telephonic conference, the Court raised a question about whether plaintiff's RICO claim is preempted by her FLSA claim. See DeSilva v. N. Shore-Long Island Jewish Health Sys. Inc., 770 F. Supp. 2d 497, 512 (E.D.N.Y. 2011). However, the court in DeSilva acknowledged that where the harm being redressed is not duplicative of the FLSA, the RICO claim would not be preempted. See id. at 512 ("However, to the extent that plaintiffs are seeking unpaid wages for hours that were not overtime hours—in other words wages that would not be covered by the requirements of the FLSA—the civil RICO claims are not duplicative of the FLSA claims and, thus, are not precluded."). Here, plaintiff not only seeks wages outside the FLSA (that is, New York spread of hours, and New York minimum wage), but her damages also flow from criminal violations of the TVPA, 18 U.S.C. §§ 1583, 1584, 1589, 1590, and 1592 (Am. Compl. ¶ 96), attributable to Kyung Bok Choi's trafficking the plaintiff across the border into the United States (Am. Compl. ¶ 15) and continuing to harbor her and extract her labor for years through a climate of fear and control (e.g., Id. ¶¶ 16, 35, 36). Thus, her RICO claim falls outside the FLSA, is not duplicative of the FLSA claim, and is not preempted by the FLSA claim.

[2] Joint and several liability attaches to each of plaintiff's claims. See, e.g., Allstate Ins. Co. v. Aminov, No. 11–CV–2391 (MKB), 2014 WL 527834, at *8 (E.D.N.Y. Feb. 7, 2014) ("Joint and several liability is available in RICO cases. . . . Treble damages and joint and several liability are properly imposed under RICO.") (internal quotation marks and citations omitted); Chubb & Son Inc. v. Kelleher, Nos. 92 CV 4484(TLM)(RML), 95 CV 0951(CBA)(RML), 2010 WL 5978913, at *6 (E.D.N.Y. Oct. 22, 2010) ("Indeed, every circuit court in the country that has addressed the issue has concluded that the nature of civil RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations.") (internal quotation marks and citation omitted); Teri v. Spinelli, 980 F. Supp. 2d 366, 373 (E.D.N.Y. 2013) ("The NYLL's definitions are nearly identical to the FLSA's. . . . District courts in this Circuit have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA. . . . An individual may simultaneously have multiple 'employers' for the purposes of the FLSA, in which case, 'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].' 29 C.F.R. § 791.2(a).") (internal quotation marks omitted); Kashi v. Gratsos, 790 F.2d 1050, 1054 (2d Cir. 1986) ("Proof of a civil conspiracy under New York law connects a defendant with the transaction and charges him with the acts and declarations of his co-conspirators, and exposes that defendant to joint and several liability for the victim's losses.") (internal citations and quotation marks omitted); Lagasan v. Al-Ghasel, No. 1:14-CV-1035 AJT/TCB, 2015 WL 1236438, at *1 (E.D. Va. Mar. 17, 2015) (awarding joint and several damages on a TVPA claim).

($484,538.47).³ Plaintiff is also entitled to liquidated damages pursuant to the Fair Labor Standards Act ($359,754.50) and the New York Labor Law ($121,134.62), as well as an additional multiplier for the RICO claim ($1,930,855.17). Thus, to the extent that the Court applies no statute of limitations defense (which it should not), plaintiff is entitled to an award in the amount of $2,896,282.76, together with costs in the amount of $1,590.00.

### III. The Court Should Not Consider Affirmative Defenses When Awarding Damages After a Default Judgment

When the Court struck Kyung Bok Choi's answer, the answer—and all of the affirmative defenses raised therein—was rendered a nullity and must be treated as though it had never been filed. Hovey v. Elliot, 167 U.S. 409, 412 (1897) (striking answer means that the case proceeds "as if no answer herein had been interposed").

Moreover, case law in this District and Circuit makes clear that district courts should not *sua sponte* consider statute of limitations defenses. Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987) ("If a defendant fails to assert the statute of limitations defense, the district court ordinarily should not raise it *sua sponte*."); see also Acosta v. Artuz, 221 F.3d 117, 122 (2d Cir. 2000) ("Generally, courts should not raise *sua sponte* nonjurisdictional defenses not raised by the parties."). This is equally true where, as here, the defendant defaulted. Clement v. United Homes, LLC, No. 10-CV-2122 (RRM), 2010 WL 4941489, at *2 (E.D.N.Y. Nov. 30, 2010) (because defaulting defendant "fail[ed] to appear and assert" a statute of limitations defense, the defense had been "abandoned"); Agamede Ltd. v. Life Energy & Tech. Holdings, Inc., No. 04-CV-2985 (SMG), 2007 WL 201167, at *3 (E.D.N.Y. Jan. 23, 2007) (holding statute of limitations defense was abandoned through defendant's default, even though it may have been meritorious).

This principle applies equally to the calculation of damages on default. In Gurung v. Malhotra, 851 F. Supp. 2d 585 (S.D.N.Y. 2012), the plaintiff moved to the United States from India in order to work for the defendants. Id. at 587. Over the course of the next several years, she received less than $120 of compensation and was treated horribly. Id. at 588. After her escape, she brought claims against the defendants, who defaulted. In calculating the damages award, the Court noted:

> Some of Gurung's FLSA claims accrued more than three years before she initialted this lawsuit. Nevertheless, in *Fisher v. Vassar Coll.*, 70 F.3d 1420, 1452 (2d Cir. 1995), the Second Circuit held that a defendant waived its FLSA statute of limitations by failing to raise it in the district court prior to its appeal. The same principle is applicable in this case, in which the defendants failed to appear, and thus did not assert any defenses. Gurung therefore may recover on her FLSA claims, <u>even if they might have been untimely</u> had the [defendants] asserted a timely statute of limitations defense.

---

³ This is not to say that plaintiff is only prosecuting a wage and hour claim. She was injured by defendants' continual failure to pay her, regardless of the cause of action pursuant to which she can recover those damages. That is, unpaid wages are the measure of her compensatory damages under the TVPA and RICO, which also provide recovery of additional categories of damages which plaintiff has declined to seek, reserving all her rights, for purposes of this damages award (such as punitive damages, pain and suffering, attorneys' fees and costs). Unpaid wages are clearly the measure of her federal and state wage and hour claims. And, they are the measure of plaintiff's economic loss, for purposes of a fraud recovery.

Id. at 592.

Plaintiff thus respectfully submits that the Court should not limit her damages award on the basis of any affirmative defenses that the defendant abandoned through his default, and should award the damages requested in her April 13, 2015 letter (Dkt. 145).[4]

### IV. Even if the Statutes of Limitation Defenses Were Applied, This Court Should Find that They Have Been Equitably Tolled

The amended complaint alleges that all of the defendants participated in a conspiracy to defraud the plaintiff out of her rightful claims to payment, by encouraging her to continue to work, without pay, on the promise that she would receive all the monies she was due at the end of her service. (Am. Compl. ¶¶ 52, 61.)  As plaintiff alleged, this conduct (which is admitted by defendant through his default) was intended to convince her "not to pursue any recourse" she may have had (id. at ¶ 52), including "seeking help to recover wages or asserting other rights" (id. at ¶ 61). This conduct thus serves to toll all the applicable statutes of limitation.  Ellul v. Congregation of Christian Bros., 774 F.3d 791, 801 (2d Cir. 2014) ("Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment"); Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) ("Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.").

Courts frequently toll statutes of limitations for trafficking victims, who lack the means, knowledge, language skills, or freedom to file claims.  This is particularly true where the plaintiffs are kept isolated from others, do not speak English, are constantly monitored, and lack any means to provide for themselves, as was the case with plaintiff.  For example, in Franco v. Diaz, 51 F. Supp. 3d 235 (E.D.N.Y. 2014), shortly after the plaintiff arrived in the United States to work as a domestic worker, the defendants took her passport, denied that they had taken it, and told plaintiff that she could not apply for a new one without risking deportation. Id. at 241. Defendants also threatened to call immigration authorities if plaintiff's work did not meet their standards. Id.  The Eastern District found that these actions isolating the plaintiff—misrepresentations regarding her passport and threats of deportation—were sufficient to equitably toll a statute of limitations. Id. at 248.  Likewise, in this case, plaintiff's passport was confiscated, plaintiff was kept in isolation, and all the defendants participated in this conduct. (Am. Compl. ¶¶ 47-51.)  Courts find that such factors warrant equitable tolling because they prevent plaintiffs from being able to pursue their claims. See also, e.g., Cruz v. Maypa, 773 F.3d 138, 145-46 (4th Cir. 2014) (applying equitable tolling to a situation of "virtual imprisonment," where plaintiff was forced to work for defendants who "confiscated her passport, isolated her from other people, monitored her communications, and threatened that she would be imprisoned and deported if she tried to escape"); Kiwanuka v. Bakilana, 844 F. Supp. 2d 107, 118 (D.D.C. 2012) (claims equitably tolled where plaintiff's employers "confiscated her identity documents and passport, threatened her with deportation, and forced her to remain completely dependent upon them"); Deressa v. Gobena, No. 1:05CV1334(JCC), 2006 WL 335629, at *1, *3-5 (E.D. Va. Feb. 13, 2006) (claims equitably tolled; threat of deportation and general inability to leave place of employment "constitute[d] affirmative acts designed to prevent [plaintiff] from . . . taking steps to enforce her contractual and common law rights").

---

[4] The Court correctly pointed out that there was no private cause of action under the TVPA until December 19, 2003.  However, plaintiff can recover the same damages requested in the April 13, 2015 letter (Dkt. 145) through her other causes of action back to 1998.

Statutes of limitations are also tolled for trafficking victims when there are barriers to their exercise of their rights. For example, in United States v. Sabhnani, 566 F. Supp. 2d 139 (E.D.N.Y. 2008), affirmed in part, vacated in part on other grounds, 599 F.3d 215 (2d Cir. 2010), the Eastern District equitably tolled the statute of limitations in an FLSA case because "not only was there no notice" of the domestic workers' rights as required under federal law, but "the [victims] could not speak English. They were completely unaware of the FLSA or any of its minimum wage or overtime provisions." Id. at 145-46. Under these circumstances, the court held, "[t]here is no question that in the present case, there was equitable tolling of the statute of limitations." Id. at 146. See also Cruz, 773 F.3d at 146-47; Ayala v. Looks Great Servs., Inc., No. 14-CV-6035, 2015 U.S. Dist. LEXIS 96790, at *10-11 (July 23, 2015) (explaining that failure to post FLSA notices can equitably toll the statute of limitations if the failure contributes to plaintiff's unawareness of his or her rights). Plaintiff's case is no different: as defendants gave her no notice of her rights as required under the law, and as she spoke no English, she was unaware of her rights and unable to exercise her rights, which the Court should find equitably tolls the limitations period. (Am. Compl. ¶¶ 61-62.)

Under these circumstances, equitable tolling is appropriate. Plaintiff is thus entitled to the full damages requested in the April 13, 2015 letter (Dkt. 145).

## V.    Alternative Damages Calculations

Although plaintiff is entitled, under the law, to the damages she has sought, for the Court's convenience, we have calculated her damages based on non-duplicative compensatory damages and appropriate multipliers after giving effect to the relevant statutes of limitation. Calculations are set forth on Exhibit A.

| Claim | Period | Compensatory | Multipliers |
|---|---|---|---|
| TVPA | 12/19/2003 – 01/08/2010 | **$273,628.49**[5] | n/a |
| RICO | 08/03/2007 – 01/08/2010 | $120,270.54[6] | Additional 2x = **$240,541.08** |
| NY Wage/Hour | 08/03/2005 – 01/08/2010 | $212,632.71 | Additional 0.25x = **$53,158.18** |
| FLSA minimum wage[7] | 08/03/2008 – 01/08/2010 | $52,689.00[8] | Additional 1x = **$52,689.00** |

---

[5] A conservative measure of plaintiff's compensatory damages is the amount she should have been paid, pursuant to state and federal law. This measure thus takes into minimum wage (Table 1), as well as overtime (Table 2) and spread of hours (Table 3). See Exhibit A.

[6] See supra n. 3.

[7] This Court should find that the failure to pay plaintiff was willful. (Am. Compl. ¶¶ 27, 34, 63.) Gurung, 851 F. Supp. 2d at 590 (through default, defendant admits violation was willful). 822 F. Supp. 2d. at 297 ("Many courts have found that a defendant's default, in itself, may suffice to support a finding of wilfulness.").

[8] See Table 1, Ex. A.

| | | | |
|---|---|---|---|
| Conspiracy to Defraud | 08/03/2005 – 01/08/2010 | $212,632.71[9] | n/a |
| **Aggregate** | | **$273,628.49** | **$346,388.26** |

Should the Court decide to give effect to the statutes of limitation, it should enter an award of $620,016.75, plus costs of $1,590, and prejudgment and post-judgment interest.

## VI.     Conclusion

Plaintiff requests that an award of $2,896,282.76, together with costs in the amount of $1,590.00, be entered against defaulted defendant Kyung Bok Choi. In the alternative, Plaintiff requests that an award of $620,016.75, together with costs in the amount of $1,590.00, be entered against defaulted defendant Kyung Bok Choi. Prejudgment and post-judgment interest should also be assessed.

Respectfully submitted,

*Alicia Llosa Chang* (signature)
Alicia Llosa Chang

cc via ECF:     Song Kim, Esq., *Counsel for Plaintiff*

---

[9] Plaintiff alleged a fraudulent promise to repay her <u>all</u> the wages she was owed. Thus, the entire $484,538.47, representing her unpaid wages back to 1998, should be recoverable. <u>See</u> Dkt. 145 at 3. However, for purposes of this alternative calculation, only six years have been calculated. See also <u>supra</u> note 3.

EXHIBIT A

Table 1: Combined New York/Federal Minimum Wage

| Period | Days | Prevailing Rate[1] | Hrs Worked (14×days) | Min. Wage Owed | TVPA | RICO | NY | FLSA | FRAUD |
|---|---|---|---|---|---|---|---|---|---|
| 12/19/2003 – 12/31/2004 | 379 | $5.15 | 5,306 | $27,325.90 | x | | | | |
| 01/01/2005 – 08/02/2005 | 214 | $6.00 | 2,996 | $17,976.00 | x | | | | |
| 08/03/2005 – 12/31/2005 | 151 | $6.00 | 2,114 | $12,684.00 | x | | | x | |
| 01/01/2006 – 12/31/2006 | 365 | $6.75 | 5,110 | $34,492.50 | x | | | x | |
| 01/01/2007 – 08/02/2007 | 214 | $7.15 | 2,996 | $21,421.40 | x | | | x | |
| 08/03/2007 – 08/02/2008 | 366 | $7.15 | 5,124 | $36,636.60 | x | x | | x | |
| 08/03/2008 – 07/23/2009 | 355 | $7.15 | 4,970 | $35,535.50 | x | x | | x | |
| 07/24/2009 – 08/02/2009 | 10 | $7.25 | 140 | $1,015.00 | x | x | | x | |
| 08/03/2009 – 01/08/2010 | 159 | $7.25 | 2,226 | $16,138.50 | x | x | | x | |
| Totals | | | | $203,225.40 | | $89,325.60 | $157,923.50 | $52,689.00 | $157,923.50 |

[1] The prevailing rate is the New York rate for all the periods listed.

Table 2: Overtime

| Period | Days | Half-Rate | OT Hours (7.7X days) | OT Owed | TVPA | RICO | NY | FLSA | FRAUD |
|---|---|---|---|---|---|---|---|---|---|
| 12/19/2003 – 12/31/2004 | 379 | $2.58 | 2,918 | $7,514.62 | x | | | | |
| 01/01/2005 – 08/02/2005 | 214 | $3.00 | 1,648 | $4,943.40 | x | | | | |
| 08/03/2005 – 12/31/2005 | 151 | $3.00 | 1,163 | $3,488.10 | x | | | x | |
| 01/01/2006 – 12/31/2006 | 365 | $3.38 | 2,811 | $9,485.44 | x | | | x | |
| 01/01/2007 – 08/02/2007 | 214 | $3.58 | 1,648 | $5,890.89 | x | | x | x | |
| 08/03/2007 – 08/02/2008 | 366 | $3.58 | 2,818 | $10,075.07 | x | x | x | x | |
| 08/03/2008 – 07/23/2009 | 355 | $3.58 | 2,734 | $9,772.26 | x | x | x | x | |
| 07/24/2009 – 08/02/2009 | 10 | $3.63 | 77 | $279.13 | x | x | x | x | |
| 08/03/2009 – 01/08/2010 | 159 | $3.63 | 1,224 | $4,438.09 | x | x | x | x | |
| Total | | | | $55,886.99 | | $24,564.54 | $43,428.96 | | $43,428.96 |

Table 3: NY Spread of Hours

| Period | Days | Rate | One Hour per Day | Spread Owed | TVPA | RICO | NY | FLSA | FRAUD |
|---|---|---|---|---|---|---|---|---|---|
| 12/19/2003 – 12/31/2004 | 379 | $5.15 | 379 | $1,951.85 | x | | | | |
| 01/01/2005 – 08/02/2005 | 214 | $6.00 | 214 | $1,284.00 | x | | | | |
| 08/03/2005 – 12/31/2005 | 151 | $6.00 | 151 | $906.00 | x | | x | | x |
| 01/01/2006 – 12/31/2006 | 365 | $6.75 | 365 | $2,463.75 | x | | x | | x |
| 01/01/2007 – 08/02/2007 | 214 | $7.15 | 214 | $1,530.10 | x | | x | | x |
| 08/03/2007 – 08/02/2008 | 366 | $7.15 | 366 | $2,616.90 | x | x | x | | x |
| 08/03/2008 – 07/23/2009 | 355 | $7.15 | 355 | $2,538.25 | x | x | x | | x |
| 07/24/2009 – 08/02/2009 | 10 | $7.25 | 10 | $72.50 | x | x | x | | x |
| 08/03/2009 – 01/08/2010 | 159 | $7.25 | 159 | $1,152.75 | x | x | x | | x |
| Total | | | | $14,516.10 | | $6,380.40 | $11,280.25 | | $11,280.25 |

| Total Compensatory Damages: | $273,628.49 | $120,270.54 | $212,632.71 | $52,689.00 | $212,632.71 |