UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

OAK-JIN OH,

                           Plaintiff,

               - against -

SOO BOK CHOI, et al.,

                         Defendants.

REPORT AND
RECOMMENDATION

CV 2011-3764 (DLI)(MDG)

- - - - - - - - - - - - - - - - - - -X

GO, United States Magistrate Judge:

      Plaintiff Oak-Jin Oh brings this action alleging violations of the Trafficking Victims Protection Act ("TVPRA"), the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and New York Labor Law.  In her complaint, plaintiff alleges that defendants hired her as a domestic worker, illegally trafficked her into the United States from South Korea, and failed to pay her wages for twelve years.

      On September 8, 2014, this Court recommended to the Honorable Dora L. Irizarry that as a sanction for his failure to comply with discovery orders, the answer of defendant Kyung Bok Choi be stricken and default be entered against him.  See ct. doc. 126. Judge Irizarry adopted this Court's report and recommendation on February 18, 2015 and referred to the undersigned plaintiff's request for damages.

FACTUAL BACKGROUND

Plaintiff alleges that in January 1998, she met defendant Soo Bok Choi ("Soo Bok") through an employment placement agency in South Korea.  Am. Compl. (ct. doc. 21) at ¶ 13.  Soo Bok told her that he was seeking to hire a domestic worker to work in his temple and family residence in the United States.  Id.  Plaintiff agreed to travel to the United States to work for Soo Bok and his family for a monthly salary of 1,300,000 Korean won or approximately $1,085 at current exchange rates.  Id.; Oh Decl. (ct. doc. 145-2) at ¶ 1.  Soo Bok flew with plaintiff from Korea to Toronto, Canada where plaintiff lived for a time with Soo Bok and defendants Ki Soon Lee, Sung Bok Choi ("Sung Bok"), Kyung Bok Choi ("Kyung Bok"), Young Il Choi ("Young Il"), Young Jin Choi ("Young Jin") and Young Mi Choi ("Young Mi").  Am. Compl. at ¶ 14.  Plaintiff was required to cook, clean and provide other domestic services for the family in Canada but was never paid for that work.  Id.

After several weeks in Canada, defendant Kyung Bok and his two children, defendant Young Mi and Young Kyung Choi, brought plaintiff to New York in a small boat.  Id. at ¶ 15.  Soo Bok met the group and drove them to his residence in Elmhurst, New York. Id.  Defendants Ki Soon Lee, Sung Bok, Young Il and Young Jin joined the other members of the Choi family in Elmhurst several days later.  Id.  At the time, plaintiff did not know that she had entered the United States without authorization.  Id.

Soo Bok told plaintiff that her job responsibilities included cleaning the house, cooking meals and doing laundry.  Id. at ¶ 17.

-2-

Plaintiff was also required to perform any other tasks that any member of the Choi family asked of her.  Id.  As Ki Soon Lee's health deteriorated, plaintiff spent more time caring for her daily needs but was still required to do all of the housework and anything that a family member asked her to do.  Id. at ¶ 26.  Soo Bok functioned as the head of the household, and in his absence, Sung Bok performed that role.  Id. at ¶ 18.  Sung Bok was responsible for managing the family's finances in the United States.  Id.  When Sung Bok left the household, Young Il and Young Mi took on the responsibility of managing the family's finances.  Id.

Plaintiff worked for the family seven days per week, typically at least 14 hours per day, although she often worked more as instructed.  Id. at ¶ 19; Oh Decl. at ¶ 3.  Plaintiff was required to be on-call 24 hours per day to respond to the family members' needs.  Am. Compl. at ¶ 19.  Plaintiff worked at this pace, without a day off, for 12 years.  Id.  All of the defendants instructed plaintiff to do work and supervised her work, although Soo Bok, Sung Bok and Ki Soon Lee had the most authority.  Id. at ¶ 21.

At some point in time, Kyung Bok, Young Mi and Young Kyung Choi moved out of the family residence.  Id. at ¶ 25.  However, they continued to benefit from plaintiff's work, such as having plaintiff prepare their meals on a regular basis.  Id.  Plaintiff also cared for Kyung Bok's dog after he moved out.  Id. at ¶ 46.

In addition to domestic work, from 1998-2001, plaintiff was required to work at the family's temple, Temple Mitasa, which was

-3-

located in one of their residences.  Id. at ¶¶ 30, 33.  The temple
was open to the public and all the defendants worked to operate the
temple.  Id.  For example, although Soo Bok led the temple, Kyung
Bok and Sung Bok placed advertisements for the temple in
newspapers, bought supplies for the temple and sold flowers and
prayer cards.  Id.

Throughout her employment with the family, plaintiff was not
paid any wages.  Id. at ¶ 27; Oh Decl. at ¶ 4.  Plaintiff alleges
the family was able to coerce her into working without pay "by
creating a climate of fear and intimidation" through threats of
physical harm and verbal abuse.  Am. Compl. at ¶¶ 35-43.  Whenever
plaintiff asked Soo Bok when she would be paid, Soo Bok responded
with verbal abuse and threats, including that he would strike her
and hire someone to kill her.  Id. at ¶ 38.  Sung Bok frequently
threatened that he would report plaintiff to the immigration
authorities and have her deported.  Id. at ¶ 42.  Sung Bok also
told plaintiff that she could not get a different job because of
her immigration status.  Id.  Ki Soon Lee also frequently
threatened plaintiff.  Id. at ¶ 43.

Plaintiff alleges that the defendants also engaged in a scheme
of false representations to induce her to continue working and to
believe that if she stopped working for them, she would never be
paid.  Id. at ¶¶ 52-53.  When "Ms. Oh began to inquire as to when
she would be paid," Sung Bok, Soo Bok and Ki Soon Lee assured her
that they would pay plaintiff at the end of her employment, when
she returned to Korea.  Id. at ¶ 54.  In reliance on these

promises, plaintiff continued to work for defendants and stopped demanding that she be paid. Id. In 2008, Soo Bok told plaintiff that she could return to Korea after Sung Bok got married in about a year. Id. at ¶ 56. After Sung Bok got married, plaintiff asked Soo Bok again if she could return to Korea but he responded with verbal assaults and threats. Id. When she raised the issue with Soo Bok again, he assured her that he would take her back to Korea the following year. Id. at ¶ 57. However, Soo Bok did not take her to Korea and responded with more verbal assaults and threats when plaintiff asked. Id. Plaintiff alleges that she continued to work for defendants in reliance on their false promises that she would eventually be paid and could return to Korea. Id. at ¶ 59. Plaintiff also believed that if she left the family, she would never receive all the back pay she was owed. Id.

Plaintiff was not permitted to leave the house without the express permission of Soo Bok, Sung Bok or Ki Soon Lee, who gave permission only when it was necessary for plaintiff to run errands for the family, such as buying groceries. Id. at ¶¶ 24, 49. If a member of the family thought plaintiff had been out too long, they questioned her as to her whereabouts and whether she had spoken with anyone. Id. at ¶ 49. Defendants discouraged plaintiff from talking to other people by telling her lies about the people she met and that people in the United States could not be trusted. Id. at ¶ 49. Plaintiff was not permitted to use the telephone without permission, and when she was granted permission, defendants monitored her calls. Id. at ¶ 50. Throughout her time living with

them, defendants hid plaintiff's passport from her.  Id. at ¶¶ 48, 51.  Soo Bok had obtained plaintiff's Korean passport for her so that she could leave Korea but confiscated it at the airport.  Id. at ¶ 51.  Ultimately, plaintiff found her passport in Young Il's bedroom.  Id.

Plaintiff usually slept on the floor, often in the basement. Id. at ¶ 45.  Other than the clothes she brought with her from Korea, the only clothes plaintiff received were used clothes from Young Jin.  Id.  Defendants never took plaintiff to the doctor or dentist even when she required medical care.  Id. at ¶ 46.

Since plaintiff had limited contact with the outside world, she was unfamiliar with her surroundings and did not speak English. Id. at ¶ 48.

In 2010, plaintiff left the defendants.  Id. at ¶ 61.

Plaintiff asserts claims against all defendants, including Kyung Bok, for violations of the TVPRA for involuntary servitude, forced labor, trafficking and document servitude, for violations of RICO and RICO conspiracy, for violations of the FLSA for failure to pay minimum wage, violations of the New York Labor Law for failure to pay minimum wage, overtime wages and spread of hours and conspiracy to commit fraud.

PROCEDURAL BACKGROUND

Plaintiff commenced this action on August 3, 2011, but plaintiff was unable to serve defendant Kyung Bok until April 24, 2012 because plaintiff had been unable to locate him.  See ct. docs. 1, 20, 36.  On July 10, 2012, attorney Seung-Jin Yang of the

Song Law Firm, who was then representing the other defendants, filed a timely answer on behalf of Kyung Bok.  See ct. doc. 42.

On October 3, 2012, plaintiff served a deposition notice on defendant Kyung Bok.  See Declaration of Michael Scheinkman in Support of Plaintiff's Motion for Sanctions ("Scheinkman Decl.") (ct. doc. 106) at ¶ 3, Ex. A.  Although counsel for the parties had agreed to a deposition date, defendant Kyung Bok cancelled the deposition three days before it was scheduled to be held.  See id. at ¶¶ 4, 5, Ex. A.  By letter motion filed on November 15, 2012 (ct. doc. 54), plaintiff moved for sanctions and attorneys' fees due to the failure of Kyung Bok to appear for his deposition.  Id. at 2, 3.  In the motion, plaintiff also sought sanctions against Young Il and Young Jin.  Id.  Counsel for defendants, Allen Wolinsky of the Song Law firm, filed no substantive response to the motion, but instead, advised that the Song Law firm would be seeking leave to withdraw due to "irreconcilable differences."  Ct. doc. 55.  The motion was heard at a conference on November 20, 2012, that had originally been set to be an end of discovery conference.  In an order filed on November 21, 2012, the Court imposed sanctions on defendant Kyung Bok, as well as each of the other appearing defendants, for the cost of a court reporter and an interpreter in the amount of $520 each to be paid by December 7, 2012.  Ct. doc. 57.  This Court also warned that further sanctions could be imposed, including entry of default judgment, for failure to pay the sanctions ordered.  See id.

By separate order dated November 21, 2012, the Court directed

-7-

defendants to appear in-person for a hearing on defense counsel's motion to withdraw.  See minute entry dated 11/21/12.  Defendant Kyung Bok failed to appear at the hearing held on December 13, 2012.  See minute entry dated 12/13/12.  At the motion hearing, plaintiff's counsel advised that defendants had not paid the sanctions imposed.  The Court directed that defendants pay by December 20 at least $780, in the aggregate, of the sanctions previously imposed on defendants.  See id.

At a further conference held on December 20, 2012, the Court directed defendants to make another payment of at least $500 by February 1, 2013.  See minute entry dated 12/20/13.  In a motion filed on December 27, 2012 on behalf of the Song Law Firm, Mr. Wolinsky sought to withdraw the firm's motion to withdraw as counsel.  Ct. doc. 59.  This Court granted the motion but the Court warned defendants in an electronically filed order on December 28, 2012, that they must continue to meet their discovery obligations and comply with all court orders.  See electronic order dated 12/28/12.

Plaintiff filed a further motion for sanctions on January 23, 2013 as a result of defendants' failure to produce discovery.  Ct. doc. 61.  Although much of this motion concerned the deficiencies of responses provided by defendant Soo Bok, plaintiff stated that defendant Kyung Bok had failed to produce any documents in response to discovery requests, which should have been answered on November 19, 2012.  Id. and n. 2.  At a conference held on January 31, 2013, this Court denied plaintiff's motion without prejudice to give the

parties "a further opportunity to resolve their disputes."  Minute
entry dated 1/31/13.  This Court again warned defendants that they
must respond to outstanding discovery requests.  See id.

Kyung Bok Choi again failed to appear for his deposition on
February 11, 2013.  See Scheinkman Decl. ¶¶ 7, 8, Ex. D.  Although
the second deposition date was scheduled for Kyung Bok Choi's
convenience and had been confirmed before the deposition, defendant
Kyung Bok telephoned his counsel to cancel the deposition on the
day of the deposition, after counsel, a court reporter and an
interpreter had already assembled.  See id.

In a motion for an extension of discovery (ct. 63) filed on
February 14, 2013, plaintiff's counsel advised that not only had
the depositions of Kyung Bok and other defendants not taken place,
but also that the Song Law Firm had stated in an email that the
firm planned to withdraw and would not attend any future
depositions scheduled.  Id.  Plaintiff's counsel expressed
reluctance to conduct depositions of represented parties in the
absence of counsel and also sought sanctions for the continued
failure of the defendants to provide timely discovery.  Id. at 1.
The Song Law Firm followed with a second motion for leave to
withdraw as counsel.  Ct. doc. 64.

At a conference on March 5, 2013, this Court reserved decision
on the motion to withdraw and directed each defendant to respond to
plaintiff's motion for sanctions by March 15, 2013.  See minute
entry dated 3/5/13.  Kyung Bok, as well as other defendants,
apparently provided some discovery responses that plaintiff found

-9-

insufficient, which led to a further motion to compel.  Ct. doc.
66.  This motion was deferred, to give the parties an opportunity
to attempt to settle and to await disposition of the motion of the
Song Law Firm to withdraw, which was adjourned to June 28, 2013.

At the hearing held on June 28, 2013, the Court explored
settlement and scheduled a further conference for August 30, 2013,
directing that all defendants appear and warning that their failure
to appear at conferences may result in sanctions being imposed.
See minute entry dated 6/28/13.  This Court also warned that the
continued failure to participate in this action may result in the
entry of default judgment.  Id.  Defendant Soo Bok, the only
defendant to appear for that hearing, advised that none of the
defendants objected to withdrawal of counsel.  Id.  On July 1,
2013, the Court granted defense counsel's motion to withdraw.  Ct.
doc. 78.  The Court advised defendants that if they do not retain
new counsel, they would be required to appear at all scheduled
conferences, and the Court also warned that failure to appear at
conferences or to comply with discovery requests could result in
sanctions and, ultimately, result in entry of default judgment.
See id.  Nevertheless, defendant Kyung Bok failed to appear at the
next conference held on August 30, 2013.  See minute entry dated
8/30/13.

In the July 1, 2013 order, this Court also advised the
defendants of their obligation to provide the Court with any
changes in their addresses and telephone numbers.  Ct. doc. 78 at
4.  In her motion filed on September 6, 2013 (ct. doc. 82),

-10-

plaintiff advised that documents that they attempted to deliver to Kyung Bok and Young Mi by courier were returned as undeliverable, even though they had been sent to addresses previously provided by defendant Soo Bok Choi.  By order filed on October 7, 2013, this Court granted that part of the plaintiff's motion requiring the other defendants to provide Kyung Bok's current contact information.  Ct. doc. 84.  This Court again warned defendants Kyung Bok and Young Mi that if they fail to provide current contact information or "to participate in future proceedings, sanctions could be imposed against them, including fines, imposition of attorneys' fees and, ultimately, entry of default judgment against them."  Id. at 1-2.

Although the order mailed to Kyung Bok was returned by the Post Office (ct. doc. 86), Kyung Bok participated by telephone at a settlement conference held on November 6, 2013.  See minute entry dated 11/6/13.  He also appeared at a continuation of the settlement conference on November 13, 2013.  See minute entry dated 11/6/13.  Because settlement discussions were not successful, the Court gave Kyung Bok and the other defendants a final opportunity to supplement responses to document requests and interrogatories by December 31, 2013 and to appear for depositions by February 14, 2014.  See id.; Transcript of November 15, 1013 hearing at 16-18.  However, defendant Kyung Bok  and the other defendants again failed to produce any response, which resulted in a further motion for sanctions (ct. doc. 101).

Kyung Bok failed to appear for a scheduled deposition for the third time, even though the deposition had been rescheduled to February 5, 2014 at defendant Kyung Bok's request.  See Scheinkman Decl. ¶ 13, Ex. I.  Kyung Bok canceled the deposition on February 3, 2013 and failed to respond to plaintiff's request for another deposition date.

The plaintiff subsequently reached agreements to settle with the other defendants.  See minute entries dated 10/8/14 and 5/22/14; ct. docs. 135, 147, 148.

## DISCUSSION

### I.  Default Judgment Standard

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages.  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011).  A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.  See Greyhound, 973 F.2d at 159.

Plaintiff argues that since Judge Irizarry granted this Court's recommendation that the answer of Kyung Bok be stricken and default be entered against him, "Kyung Bok Choi has admitted liability on the causes of action made out against him in the complaint."  See ct. doc. 150 at 2.  On the contrary, a defendant's

-12-

default admits only the well-pleaded allegations in the complaint but does not conclusively establish a defendant's liability. Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 n.17 (2d Cir. 2015). The district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

The court must also ensure that there is a reasonable basis for the damages specified in a default judgment.  This Court did not conduct a hearing to determine plaintiff's damages.  The Second Circuit has made clear that a hearing to determine the amount of damages with regard to a default judgment is not required "as long as [the court is] ensured that there [is] a basis for the damages specified in the default judgment." Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989) (whether a hearing is necessary is in the discretion of the district court); see also Fed. R. Civ. P.  55(b)(2) (the court may conduct such hearings or order such references as it deems necessary and proper in order to determine the amount of damages); Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) (Rule 55(b)(2) allows but does not require the district judge to conduct a hearing).  A court may rely instead on detailed affidavits or documentary evidence in addition to the judge's personal knowledge of the record, acquired over the course of his or her involvement with the litigation.  Fustok, 873 F.2d at 40; see also Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993); Action S.A., 951 F.2d at 508.  The moving party is

entitled to all reasonable inferences from the evidence it offers.
See Romanowicz, 577 F.3d at 84; Au Bon Pain, 653 F.2d at 65 (citing
Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683
(S.D.N.Y. 1969)).

## II. Liability

### A.   The TVPRA

The TVPRA was enacted in 2000, and the amendment creating a
right of action, codified at 18 U.S.C. § 1595, was enacted in
December 2003 and amended in December 2008.  See Velez v. Sanchez,
693 F.3d 308, 324 (2d Cir. 2012) (citing Pub. L. No. 108-193, §
4(a)(4), 117 Stat. at 2877; Pub. L. No. 110-457, § 221, 122 Stat.
5044, 5067 (2008).  Section 1595 provides that an individual who is
a victim of forced labor, trafficking or involuntary servitude "may
bring a civil action against the perpetrator (or whoever knowingly
benefits, financially or by receiving anything of value from
participation in a venture which that person knew or should have
known has engaged in an act in violation of this chapter)."

Plaintiff asserts claims under four different sections of the
TVRPA.

### 1.   18 U.S.C. § 1590 - Trafficking

Section 1590 provides for liability on a person who "knowingly
recruits, harbors, transports, provides, or obtains by any means,
any person for labor or services" for purposes of forced labor or
involuntary servitude.  As plaintiff concedes, there was no private
right of action for violations of section 1590 occurring prior to
December 19, 2003.  See Velez, 693 F.3d at 324; Guobadia v. Irowa,

-14-

103 F. Supp. 3d 325, 334-35 (E.D.N.Y. 2015); <u>Doe v. Siddiq</u>, 810 F. Supp. 2d 127, 136 (D.D.C. 2011).  Although the "transporting" conduct here occurred before there was a private right of action under the statute, I recommend granting the motion for default judgment on this claim as to conduct after December 19, 2003 since plaintiff alleges that defendants harbored plaintiff in their home to exploit her labor.  <u>See Shukla v. Sharma</u>, 2012 WL 481796, at *5 (E.D.N.Y. 2012); <u>Martinez v. Calimlim</u>, 651 F. Supp. 2d 852, 858 (E.D. Wisc. 2009).

      2.   <u>18 U.S.C. § 1584 - Involuntary Servitude</u>

Section 1584 imposes liability on anyone who "knowingly and willfully holds to involuntary servitude . . . any other person for any term, or brings within the United States any person so held."  The Supreme Court has defined "involuntary servitude" under this section as "a condition of servitude in which the victim is forced to work for a defendant by use of threat of physical restraint or injury or by use of coercion through law or legal process."  <u>United States v. Kozminski</u>, 487 U.S. 931, 952 (1989).  There was no express private right of action for violations of section 1584 prior to the amendment of section 1595 on December 23, 2008.  <u>See Siddiq</u>, 810 F. Supp. 2d at 135; <u>see also Samirah v. Sabhnani</u>, 772 F. Supp. 2d 437, 448 (E.D.N.Y. 2011) (finding implied cause of action under section 1584 prior to 2008).

Plaintiff's allegations that defendants forced her to work and threatened her with violence and that Kyung Bok knowingly benefitted from her labor is sufficient to state a claim under

-15-

section 1584.  See Aquirre v. Best Care Agency, Inc., 961 F. Supp.
2d 427, 461 (E.D.N.Y. 2013); Manliguez v. Joseph, 226 F. Supp. 2d
377, 384-85 (E.D.N.Y. 2002).  In fact, even after Kyung Bok moved
out of the Choi family residence, plaintiff alleges that he
benefitted from plaintiff's work for the Choi family.  Cf. Stein v.
World-Wide Plumbing Supply, 71 F. Supp. 3d 320, 328  (E.D.N.Y.
2014) (dismissing claim under section 1595 for lack of allegation
that defendant benefitted from peonage).  Accordingly, I recommend
granting plaintiff's motion for default judgment on this claim at
least insofar as it relates to conduct occurring after December 23,
2008.

>            3.   18 U.S.C. § 1589 - Forced Labor

Section 1589 provides for liability against any person who
provides or obtains the labor or services of a person "by means of
force, threats of force, physical restraint, or threats of physical
restraint to that person or another person; . . . by means of the
abuse or threatened abuse of law or legal process; or by means of
any scheme, plan, or pattern intended to cause the person to
believe that, if that person did not perform such labor or
services, that person or another person would suffer serious harm
or physical restraint."  18 U.S.C. § 1589(a).  Plaintiff's
allegations of threats of physical harm and deportation are
sufficient to state a claim under section 1589.  See Walia v.
Veritas Healthcare Solutions, L.L.C., 2015 WL 4743542, at *4
(S.D.N.Y. 2015).  As above, although there are no allegations that
Kyung Bok personally threatened plaintiff with any harm or used

force or physical restraint against her, he is alleged to have benefitted from her forced labor and participated in the scheme to extract plaintiff's forced labor.  See Aguirre, 961 F. Supp. 2d at 461.  Therefore, I recommend granting plaintiff's motion for default judgment on this claim as to conduct occurring after December 19, 2003.

           4.    18 U.S.C. § 1592(a) - Document Servitude

Section 1592 provides for liability for any person who "knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person" in connection with a violation of the TVRPA. There was no private right of action under section 1592 prior to 2008.  See Tanedo v. East Baton Rouge Parish Sch. Bd., 2012 WL 5378742, at *7 (C.D. Cal. 2012).  Plaintiff alleges that Soo Bok took her passport after they left Korea and that she ultimately found it in Young Il's bedroom.  Although there are no allegations concerning Kyung Bok taking or being in possession of her passport, he is alleged to have benefitted from and participated in the scheme to keep plaintiff confined for the purpose of obtaining her labor.  Therefore, I recommend granting plaintiff's motion for default judgment on this count as to conduct occurring after December 23, 2008.

    B.    RICO

The Racketeer Influenced and Corrupt Organizations Act, commonly referred to as RICO, provides in relevant part:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

18 U.S.C. § 1962(c).  Although RICO is a criminal statute, 18 U.S.C. § 1964(c) provides those injured by the conduct delineated in the RICO statute the right to bring a civil suit for triple damages and costs, including attorneys' fees.

To sustain a civil RICO claim, a plaintiff must first allege the existence of each of the following seven elements before turning to its second burden:

(1) that the defendant; (2) through the commission of two or more acts; (3) constituting a 'pattern;' (4) of 'racketeering activity;' (5) directly or indirectly invests in, or maintains an interest in, or participates in; (6) an 'enterprise;' (7) the activities of which affect interstate or foreign commerce.

Town of West Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir. 1990); see United States v. Turkette, 452 U.S. 576, 583 (2011); DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001). Additionally, plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003); DeFalco, 244 F.3d at 329; 18 U.S.C. § 1964(c).

The term "enterprise" includes a "legal entity" or an association-in-fact that is not a legal entity.  18 U.S.C. § 1961(4).  In order to establish liability under section 1962(c), a plaintiff must allege and prove the existence of two distinct entities, a person and an enterprise.  See Cedric Kushner

Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001).

"Racketeering activity" is defined as any act indictable under an array of federal criminal statutes. See 18 U.S.C. § 1961(1). To constitute a "pattern of racketeering activity," there must be at least two predicate acts meeting the definition of racketeering activity. 18 U.S.C. § 1961(5). The "pattern" element may be satisfied by either closed-ended or open-ended continuity. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241-42 (1989). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." Id. In determining whether closed-ended continuity exists, courts consider several factors, including: "the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 467 (2d Cir. 1995) (citations omitted). To meet the "pattern" requirement, defendants' activities must be more than "isolated" or "sporadic." Id.; see Metromedia Co. v. Fugazy, 983 F.2d 350, 369 (2d Cir. 1992) (finding two year period of racketeering activity sufficient).

Under section 1962(c), plaintiff must also establish that defendants "participated in the operation or management of the enterprise itself." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 521 (2d Cir. 1994)). The "operation or

management" test is satisfied "not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." Reves v. Ernst & Young, 507 U.S. 170, 179 (1993).  In the Second Circuit, "the operation or management test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." First Capital, 385 F.3d at 176.

     The allegations in the amended complaint suffice to  establish that the Choi family operated as an association-in-fact for the common purpose of trafficking plaintiff into this country and keeping her in a condition of involuntary servitude or forced labor over a substantial period of time.  See Martinez, 651 F. Supp. 2d 852, 858 (finding family association-in-fact enterprise for the purpose of obtaining, maintaining and concealing plaintiff's involuntary labor over a period of 19 years).  The allegations of forced labor, human trafficking and document fraud are predicate acts sufficient to sustain a RICO claim.  See Javier v. Beck, 2014 WL 3058456, at *7 (S.D.N.Y. 2014); Magnifico v. Villanueva, 783 F. Supp. 2d 1217, 1227 (S.D. Fla. 2011); Tanedo v. E. Baton Rouge Par. Sch. Bd., 790 F. Supp. 2d 1134, 1148 (C.D. Cal. 2011); see also Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 540 (3d Cir. 2012) (finding involuntary servitude a RICO predicate act).  The individual defendants are persons "distinct" from the association-in-fact enterprise for purposes of RICO.  See De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 300-01 (S.D.N.Y. 2013); In re Gas Reclamation, Inc. Sec. Litig., 659 F. Supp. 493, 518 (S.D.N.Y.

1987); <u>In re Energy Sys. Equip. Leasing Sec. Litig.</u>, 642 F. Supp. 718, 740-41 (E.D.N.Y. 1986).

Kyung Bok played some part in directing the affairs of the enterprise since he was primarily responsible for transporting plaintiff into the United States illegally and benefitted from the work she performed for the Choi family.  Even lower rung participants in an enterprise who knowingly implement the decisions of upper management are liable.  Because he lived in the Choi family residence for part of the relevant time period, the Court can infer that he knew of the scheme to induce plaintiff to continue working for the family based on the false promises that she would be paid and threats of physical violence and deportation.

"The plaintiff's second 'pleading burden' is to allege that he was 'injured in his business or property by reason of a violation of section 1962.'"  <u>West Hartford</u>, 915 F.2d at 100.  This means that the plaintiff must be able to show that her  injuries were "proximately caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts."  <u>Lerner</u>, 318 F.3d at 122-23; <u>Hecht v. Commerce Clearing House, Inc.</u>, 897 F.2d 21, 23 (2d Cir. 1990).  Upon a defendant's default, proximate causation is irrefutably established when it is properly alleged in the complaint.  <u>Greyhound</u>, 973 F.2d at 159.

The allegations in the amended complaint regarding the defendants' actions more than suffice to establish that they proximately caused financial injuries to plaintiff.  <u>See</u> <u>Metromedia</u>, 983 F.2d at 368.

-21-

RICO claims are subject to a four year statute of limitations. See Rotella v. Wood, 528 U.S. 549, 552 (2000). The limitations period begins to run when the plaintiff discovered or should have discovered the injury. See Koch v. Christie's Int'l, 699 F.3d 141, 151 (2d Cir. 2012). Since plaintiff alleges that defendants deceived her, withheld her passport and restricted her movements while she lived with the Choi family, the limitations period was not triggered until she escaped from her confinement. Cf. Wallace v. Kato, 549 U.S. 384, 391 (2007) (finding that limitations period for section 1983 claim began to run when false imprisonment ended). Since plaintiff alleges that she left the Choi family in 2010 and this action was filed in 2011, her RICO claim is timely.

At the conference held on June 30, 2015, the Court raised the question whether plaintiff's RICO claim is preempted by her FLSA claim. Several courts in this Circuit have found that RICO claims cannot be grounded in the same facts as a plaintiff's FLSA claim. See Gordon v. Kaleida Health, 847 F. Supp. 2d 479, 489 (W.D.N.Y. 2012); Hintergerger v. Catholic Health Sys., 2012 WL 125270, at *5-*6 (W.D.N.Y. 2012); DeSilva v. North Shore-Long Island Jewish Health Sys., 770 F. Supp. 2d 497, 515 (E.D.N.Y. 2011). I find that plaintiff's RICO claim is not precluded by her FLSA claim since the RICO claim is premised on the defendants having trafficked her into this country and extracted her labor through force and intimidation whereas the FLSA claim is premised solely on the failure to pay minimum wages. However, to the extent plaintiff seeks recovery of

unpaid minimum wages under RICO, that aspect of her claim is precluded by the FLSA.

C.   RICO Conspiracy

Section 1962(d) makes it unlawful "for any person to conspire to violate any of the [other] provisions of section 1962." A plaintiff who has established the existence of a RICO enterprise need only prove in addition "that the defendants know the general nature of the conspiracy and that the conspiracy extends beyond their individual roles." United States v. Zichettello, 208 F.3d 72 (2d Cir. 2000) (quoting United States v. Rastelli, 870 F.2d 822, 828 (2d Cir. 1989)). Even if one or more defendants did not himself commit the predicate acts, he may be liable for conspiring with others to commit those acts if he "knew about and agreed to facilitate the scheme." Salinas v. United States, 522 U.S. 52, 66 (1997).

Plaintiff alleges that Kyung Bok participated with the other defendants in a common scheme and plan to violate plaintiff's rights. Kyung Bok trafficked plaintiff into the United States which furthered the scheme to extract plaintiff's labor. These allegations are sufficient to state a claim for conspiracy.

D.   FLSA

Section 206 of the FLSA sets forth a minimum hourly wage employers must pay their employees who engage in work affecting interstate commerce, which includes domestic workers.[1] 29 U.S.C.

---

[1] As a live-in domestic worker, plaintiff is not entitled to overtime wages under the FLSA. See 29 U.S.C. § 207(b)(21).

§§ 202(a), 206(a)(1)(C), (f).  Employers in violation of this
provision "shall be liable to the employee or employees affected in
the amount of their unpaid minimum wages, . . . and in an
additional equal amount as liquidated damages."  Id. § 216(b).
The FLSA broadly defines an "employer" as "any person acting
directly or indirectly in the interest of an employer in relation
to an employee."  29 U.S.C. § 203(a).  Plaintiff alleges that the
defendants were her "joint employers."  Courts in the Second
Circuit apply the "economic reality" test in determining whether a
defendant is a joint employer under the FLSA.  "[T]he overarching
concern is whether the alleged employer possessed the power to
control the workers in question."  Herman v. R.S.R. Security Servs.
Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  The four factors relevant
to the "employer" inquiry are "whether the alleged employer (1) had
the power to hire and fire the employees, (2) supervised and
controlled employee work schedules or conditions of employment, (3)
determined the rate and method of payment, and (4) maintained
employment records."  Carter v. Dutchess Community College, 735
F.2d 8, 12 (2d Cir. 1984); see also Herman, 172 F.3d at 139.

    Plaintiff alleges that Kyung Bok "recruited" plaintiff to work
for the Choi family and "instructed" plaintiff to do work,
"supervised" her work, and "controlled" her schedule.  Am. Compl.
at ¶ 6.  Plaintiff further alleges that "all of the Defendants
willfully and intentionally did not pay Ms. Oh any wages."  Id. at
¶ 27.  These allegations are sufficient to establish that all
defendants had control over the terms and conditions of plaintiff's

employment.   Therefore, Kyung Bok is an employer  subject to FLSA
liability.

Plaintiff alleges in her complaint that defendants did not pay
her any wages, let alone the proper minimum wage.  Based on the
undisputed allegations in the complaint, I recommend finding
defendant Kyung Bok liable for violation of the minimum wage
provisions of the FLSA.

E.   New York Labor Law

New York's Labor Law is the state analogue to the federal
FLSA.  One notable difference in New York law is a "spread of
hours" provision which allows a plaintiff to recover an extra
hour's worth of pay at the minimum wage for each day that an
employee works in excess of ten hours.  N.Y. Comp. Codes R. & Regs.
tit. 12, § 142-2.4.  In addition, unlike the FLSA, resident
domestic workers are entitled to overtime pay under the New York
Labor Law.  See 12 N.Y.C.R.R. § 142-2.2.

For the reasons discussed above, the allegations in the
complaint are sufficient to impose liability on defendant Kyung Bok
for minimum wage violations under the Labor Law.  See Debejian v.
Atl. Testing Labs., Ltd., 64 F. Supp. 2d 85, 87 n.1 (N.D.N.Y. 1999)
(finding New York Labor Law provisions "substantially similar to
the federal scheme" such that its analysis of federal law would
apply equally to claims brought under the FLSA and New York law).
In addition, plaintiff's allegations are valid that defendants
violated the overtime provisions of the Labor Law by failing to pay
her time and one-half of the minimum wage for those hours worked in

-25-

excess of forty four hours per week. See 12 N.Y.C.R.R. § 142-2.2.
Finally, the Court finds that plaintiff is entitled to recover
"spread of hours" pay under the Labor Law based upon the undisputed
allegations that she regularly worked over 10 hours per day but was
not given an extra hour's worth of wages at minimum wage for those
days.

     F.    <u>Conspiracy to Commit Fraud</u>

To adequately plead a claim for conspiracy to commit fraud
under New York law, in addition to pleading the underlying fraud, a
plaintiff must demonstrate: "(1) an agreement among two or more
parties; (2) a common objective; (3) acts in furtherance of the
objective; and (4) knowledge." <u>JP Morgan Chase v. Winnick</u>, 406 F.
Supp. 2d 247, 259 (S.D.N.Y. 2005) (quoting <u>Filler v. Hanvit</u>, 2003
WL 22110773, at *2 (S.D.N.Y. Sept. 12, 2003)). To state a cause of
action for the tort of fraud under New York law, a plaintiff must
plead: "(1) a misrepresentation or omission of material fact; (2)
which the defendant knew to be false; (3) which the defendant made
with the intention of inducing reliance; (4) upon which the
plaintiff reasonably relied; and (5) which caused injury to the
plaintiff." <u>Wynn v. AC Rochester</u>, 273 F.3d 153, 156 (2d Cir.
2001); <u>see</u> <u>Premium Mortg. Corp. v. Equifax, Inc.</u>, 583 F.3d 103, 108
(2d Cir. 2009).

Plaintiff alleges that defendants knowingly induced her to
come to the United States and to continue working for the Choi
family by falsely promising her that she would be paid for her
work. Plaintiff further pleads a claim for conspiracy in that

defendant Kyung Bok knowingly agreed to cooperate in the fraudulent scheme and acted in furtherance of that scheme.  The allegations in the amended complaint are sufficient to state a claim for conspiracy to commit fraud.

III.  Damages

    A.    Statute of Limitations

As was raised by the Court at the June 2015 conference, the face of the complaint triggers statute of limitations concerns with respect to the damages sought.  Plaintiff alleges that she began working for the Choi family in 1998 but this action was not commenced until 2011.  Plaintiff argues that the defaulting defendant has waived any defenses that may be applicable.  However, where applicable defenses are apparent on the face of the complaint, it is appropriate for the Court to raise them sua sponte.  See DeSantis v. City of New York, 2014 WL 228659, at *5-*6 (S.D.N.Y. 2014) (adopting report and recommendation sua sponte dismissing on statute of limitations grounds claims against defaulting defendant); see also Walters v. Indus. and Commercial Bank of China, 651 F.3d 280, 293 (2d Cir. 2011) ("district courts may dismiss an action sua sponte on limitations grounds . . . where "'the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted'") (quoting Leonhard v. United States, 633 F.2d 599, 609 n.11 (2d Cir. 1980)).

On the other hand, plaintiff has pled sufficient facts in the complaint to make a colorable claim that equitable tolling should be applied here.  The doctrine of equitable tolling permits a

plaintiff to initiate an action beyond the statute of limitations in limited circumstances to "prevent unfairness to a plaintiff who is not at fault for her lateness in filing." Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004). Plaintiff bears the burden of demonstrating that 1) that she has pursued her rights diligently and 2) that some extraordinary circumstance stood in her way. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). The relevant question is "whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action," and "despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." Valdez ex rel. Donely v. United States, 518 F.3d 173, 182-83 (2d Cir. 2008); Veltri, 393 F.3d at 323. The doctrine is "applied only in rare and exceptional circumstances." Jenkins v. Greene, 630 F.3d 298, 302 (2d Cir. 2010).

Plaintiff alleges in the complaint that "after nearly twelve years of living under the Choi Family's control, Ms. Oh was finally able to escape. The Defendants' conduct and misrepresentations induced Ms. Oh to continue working and to forbear seeking help to recover wages or asserting other rights." Am. Compl. at ¶ 61. Specifically, as discussed above, plaintiff alleges that defendants threatened her with violence, with deportation and confiscated her passport. Defendants further isolated her, restricted her communications with others and repeatedly promised to pay her with no intention of doing so. Several courts have applied equitable tolling under similar circumstances involving allegations of forced

labor.  See, e.g., Lagasan v. Al-Ghasel, 92 F. Supp. 3d 445, 457 (E.D. Va. 2015); Lama v. Malik, 58 F. Supp. 3d 226, 235 (E.D.N.Y. 2014); Franco v. Diaz, 51 F. Supp. 3d 235, 248 (E.D.N.Y. 2014) (state law battery claim); Kiwanuka v. Bakilana, 844 F. Supp. 2d 107, 118 (D.D.C. 2012); Doe v. Siddig, 810 F. Supp. 2d 127, 133 (D.D.C. 2011); Deressa v. Gobena, 2006 WL 335629, at *3 (E.D. Va. 2006); see also United States v. Sabhnani, 566 F. Supp. 2d 139 (E.D.N.Y. 2008), vacated in part on other grounds, 599 F.3d 215 (2d Cir. 2010).  To the extent plaintiff's requests to defendants for payment demonstrate some awareness of her rights, "merely knowing one has a general entitlement to compensation for work performed is very different from awareness of a legal right to minimum wage and overtime compensation under the FLSA or the NYLL." Lama, 58 F. Supp. 3d at 234; cf. Velez, 693 F.3d at 329 (recognizing that plaintiff remaining at domestic employer's house despite not being paid was due to having no money, poor language skills and little prospect of supporting herself).

Ordinarily, equitable tolling is an issue determined on a motion for summary judgment or at the time of trial since it is heavily fact dependent.  See Upadhyay v. Sethi, 2012 WL 260636, at *5 (S.D.N.Y. 2012); Garcia v. Pancho Villa's of Huntington Village, Inc., 268 F.R.D. 160, 166 (E.D.N.Y. 2010); Ramirez v. CSJ & Co., Inc., 2007 WL 1040363, at *2 (S.D.N.Y. 2007). However, Kyung Bok has not made any motion to dismiss on statute of limitations grounds nor raised any facts to support arguments against the application of equitable tolling.  I therefore

recommend finding that plaintiff's claims are timely for purposes of awarding damages pursuant to a judgment by default. See GEICO v. Simakovsky, 2015 WL 5821407, at *11 n.3 (E.D.N.Y. 2015) (calculating damages on default judgment based on assumption that equitable tolling applies); cf. Romanowicz, 577 F.3d at 84 (reversing finding of no personal liability against individual defendant who failed to appear and raise affirmative defense).

Plaintiff seeks damages in the amount of $2,896,282.76 as follows: $484,538.47 for unpaid minimum wages, overtime and spread of hours; $359,754.50 in liquidated damages pursuant to the FLSA; $121,134.62 in liquidated damages under New York Labor Law; and $1,930,855.17 in double damages under RICO.  Plaintiff uses as the measure of her compensatory damages unpaid wages during her term of employment and has declined to seek damages for pain and suffering, punitive damages, attorneys' fees and costs.  I agree that regardless of which cause of action is applied to calculate plaintiff's compensatory damages, plaintiff's economic injuries should be measured by her unpaid wages.  See 18 U.S.C. § 1593(b)(1)(G) ("full amount of victim's losses" includes "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the [FLSA]"); Carazani v. Zegarra, 972 F. Supp. 2d 1, 16 (D.D.C. 2013); Doe v. Howard, 2012 WL 3834867, at *6 (E.D. Va. 2012); Vaughn v. Consumer Home Mortg. Co., 470 F. Supp. 2d 248, 269 (E.D.N.Y. 2007)

("New York law provides that the measure of damages in an action predicated on fraud is the actual pecuniary loss").

B.   <u>Minimum Wage</u>

Plaintiff requests damages based on her having worked for the Choi family from January 8, 1998 to January 8, 2010.  In support, plaintiff has submitted a sparse affidavit simply stating that she entered into an employment contract on January 8, 1998 to be a domestic worker for Soo Bok Choi and his family.  Oh Aff. at ¶ 1. Plaintiff further states that she worked for the Choi family "for a little over ten years," for 14 hours per day, 7 days per week, without pay.  <u>Id.</u> at ¶ 3.  Although plaintiff alleges in the complaint that she began working on January 8, 1998, she mentions no other date with respect to the time that she worked for defendants other than to say she lived for "nearly twelve years . . . under the Choi Family's control."  Am. Compl. at ¶ 61; <u>see</u> <u>also</u> <u>id.</u> at ¶ 19 (alleging that plaintiff worked 14 hours per day, 7 days per week, with no days off, for "twelve years").

It is well established, as noted above, that "'[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'"  <u>Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors Inc.</u>, 699 F.3d 230, 234 (2d Cir. 2012) (quoting <u>Greyhound</u>, 973 F.2d at 158).  Given the vagueness of the allegations in the complaint regarding the time period that she worked, I accept the time period discussed by plaintiff in her affidavit and recommend calculating plaintiff's

damages based on a 10 year period, from January 8, 1998 to January 8, 2008.

Generally, an employee-plaintiff under the FLSA "has the burden of proving that he performed work for which he was not properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds by The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, et seq. In addressing the problem of proof faced by employees, the Supreme Court in Anderson held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. As courts have found, a plaintiff can meet this burden "by relying on his recollection alone." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005); see also Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011); Padilla v. Manlapaz, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009); Park v. Seoul Broad. Sys. Co., 2008 WL 619034, at *7 (S.D.N.Y. 2008); Chan v. Sung Yue Tung Corp., 2007 WL 313483, at *24 (S.D.N.Y. 2007). "In the absence of rebuttal by defendants," Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998), or "[w]here the employer has defaulted, [as here, the employee's] recollection and estimates of hours worked are presumed to be correct." Pavia v. Around the Clock Grocery, Inc., 2005 WL 4655383, at *5 (E.D.N.Y. 2005); see also Harold Levinson Assocs., Inc. v. Chao, 37 Fed. App'x 19, 20 (2d Cir. 2002). Accordingly, I recommend crediting

plaintiff's estimate that she worked at least 14 hours per day, 7 days per week for 10 years.

An employee gets the benefit of the higher of the applicable federal or state minimum wage.  See 29 U.S.C. § 218(a); Galeana v. Lemongrass on Broadway Corp., --- F. Supp. 3d ---, 2014 WL 1364493, at *7 (S.D.N.Y. 2014).  During plaintiff's period of employment, the New York minimum wage was higher or the same as the federal minimum wage for all but the period of January 8, 1998 to March 31, 2000: January 8, 1998 through December 31, 2004 - $5.15 per hour; January 1, 2005 through December 31, 2005 - $6.00 per hour; January 1, 2006 through December 31, 2006 - $6.75 per hour; January 1, 2007 through January 8, 2008 - $7.15 per hour.  See N.Y.L.L. § 652(1); 29 U.S.C. § 206(a).  The federal minimum wage rate from January 8, 1998 to March 31, 2000 was $5.15.

Plaintiff's unpaid minimum wages are summarized below:

| Time Period | Applicable Rate | Hours Worked Per Day | Days Worked in Period | Total |
|---|---|---|---|---|
| 1/8/1998-12/31/2004 | $5.15 | 14 | 2550 | $183,855.00 |
| 1/1/2005-12/31/2005 | $6.00 | 14 | 365 | 30,660.00 |
| 1/1/2006-12/31/2006 | $6.75 | 14 | 365 | 34,492.50 |
| 1/1/2007-1/8/2008 | $7.15 | 14 | 373 | 37,337.30 |
| | | | | $286,344.80 |

C.    Overtime Wages

Plaintiff also seeks overtime wages under the New York Labor Law since she was not paid time and one-half for those hours she worked over 44 hours during a given week.  Since plaintiff claims

that she worked 98 hours per week for her entire employment, she is entitled to overtime wages each week.  Although the Court has already calculated the minimum wage due for each hour worked, since federal law does not apply to plaintiff's unpaid overtime wages, I calculate one-half of the New York minimum wage as plaintiff's unpaid overtime wage for hours worked in excess of 44  hours in a week.  See 12 N.Y.C.R.R. § 142-3.2 (providing for overtime rate to be paid to residential employees for hours worked in excess of 44 hours per week).

Plaintiff's unpaid overtime is calculated as follows.

| Time Period | Half of NY Min. Wage Rate | Overtime Hours Per Day | Days Worked In Period | Total |
|---|---|---|---|---|
| 1/8/1998-3/30/2000 | $2.125 | 7.7 | 813 | $13,302.71 |
| 3/31/2000-12/31/2004 | $2.575 | 7.7 | 1737 | 34,440.37 |
| 1/1/2005-12/31/2005 | $3.00 | 7.7 | 365 | 8,431.50 |
| 1/1/2006-12/31/2006 | $3.375 | 7.7 | 365 | 9,485.44 |
| 1/1/2007-1/8/2008 | $3.575 | 7.7 | 373 | 10,267.76 |
| | | | | $75,927.78 |

D.   New York Spread of Hours

Plaintiff requests an award for "spread of hours" pay under New York Labor Law.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.18.  On those days when the interval between the beginning and end of an employee's workday exceeds 10 hours, New York law requires that the employee "receive one hour's pay at the basic minimum hourly wage rate."  Id. § 142-2.4; see, e.g., Pavia, 2005 WL 4655383, at *8 (awarding spread of hours pay).  Since plaintiff

-34-

worked 14 hours per day, she is entitled to an additional one hour of pay at the applicable minimum wage for each day worked.

Plaintiff's spread of hours pay is calculated as follows.

| Time Period | NY Minimum Wage Rate | Days Worked In Period | Total |
|---|---|---|---|
| 1/8/1998-3/30/2000 | $4.25 | 813 | $    3,455.25 |
| 3/31/2000-12/31/2004 | $5.15 | 1737 | 8,945.55 |
| 1/1/2005-12/31/2005 | $6.00 | 365 | 2,190.00 |
| 1/1/2006-12/31/2006 | $6.75 | 365 | 2,463.75 |
| 1/1/2007-1/8/2008 | $7.15 | 373 | 2,666.95 |
| | | | $   19,721.50 |

E.    Liquidated Damages

Plaintiff also seeks liquidated damages under both the FLSA and New York Labor Law.  Liquidated damages under the FLSA are "compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA."  Herman v. RSR Secs. Servs., Ltd., 172 F.3d 132, 141-42 (2d Cir. 1999); see Irizarry v. Catsimatidis, 722 F.3d 99, 116 (2d Cir. 2013) (noting that liquidated damages under the FLSA are not penalties).  In contrast, "liquidated damages under the Labor Law 'constitute a penalty,' to deter an employer's willful withholding of wages due." Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 265 (2d Cir. 1999).

District courts in this Circuit are divided as to whether overlapping liquidated damages awards are available under the FLSA and the New York Labor Law.  The majority view is that plaintiffs may recover liquidated damages under both statutes because each

-35-

award serves fundamentally different purposes.  See
Sanchez v. Viva Nail N.Y. Inc., 2014 WL 869914, at *5 (E.D.N.Y.
2014); Maliza v. 2001 MAR-OS Fashion, Inc., 2010 WL 502955, at *1 &
n.4 (E.D.N.Y. 2010); Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240,
261-62 (S.D.N.Y. 2008); cf. Reilly, 181 F.3d at 265 (plaintiff may
recover both liquidated damages under New York Labor Law and pre-
judgment interest "because [they] serve fundamentally different
purposes").  However, there is an emerging trend towards denying a
cumulative recovery of liquidated damages because under the 2011
amendments increasing liquidated damages from 25% to 100% and the
2009 amendments changing the standard of proof, the New York Labor
Law liquidated damages provision now closely parallels the FLSA
provisions.  See Man Wei Shiu v. New Peking Taste Inc., 2014 WL
652355, at *13 (E.D.N.Y. 2014); Gortat v. Capala Bros., 949 F.
Supp. 2d 374, 381-82 (E.D.N.Y. 2013).  While the reasoning of these
courts is persuasive that reassessment of double liquidated damages
is warranted, since the plaintiffs' application here is uncontested
and the 2009 and 2011 amendments do not apply retroactively, I
recommend following the majority view and awarding liquidated
damages under both federal and state law.  See Collado v.
Donnycarney Rest. L.L.C., 2015 WL 4737917, at *7 (S.D.N.Y. 2015);
Alvarez v. 215 N. Ave. Corp., 2015 WL 3855285, at *6 (S.D.N.Y.
2015).

    Section 216(b) of the FLSA provides that an employer shall be
liable to the employees who are not paid minimum wages "an
additional equal amount as liquidated damages" unless the employer

can show that it acted in good faith. 29 U.S.C. § 216(b). As the defendants here have defaulted, they have not shown they acted in good faith. See, e.g., Blue v. Finest Guard Services, Inc., 2010 WL 2927398, at *11 (E.D.N.Y. 2010) (finding that a defendant's default, in itself, may suffice to support a claim for liquidated damages); Dong v. CCW Fashion Inc., 2009 WL 884680, at *4-5 (S.D.N.Y. 2009). Accordingly, I recommend awarding liquidated damages under the FLSA to plaintiff. However, federal liquidated damages must be calculated according to the applicable federal minimum wage rate, even where the state minimum wage rate was higher. See Galeana, 2014 WL 1364493, at *9. Thus, I recommend awarding liquidated damages under the FLSA in the amount of $267,115.10, calculated as follows.

| Time Period | Applicable Hourly Rate | Hours Worked Per Day | Days Worked In Period | Total |
|---|---|---|---|---|
| 1/8/1998-12/31/2006 | $5.15 | 14 | 3280 | $236,488.00 |
| 1/1/2007-12/31/2007 | $5.85 | 14 | 365 | 29,893.50 |
| 1/1/2008-1/8/2008 | $6.55 | 14 | 8 | 733.60 |
| | | | | $267,115.10 |

Plaintiffs are also entitled to liquidated damages based on 25 percent of the amounts owed for minimum wages,[2] overtime wages and spread of hours under New York state law. See N.Y. Lab. Law § 198(1-a); Jiaren Wei v. Lingtou Zhengs Corp., 2015 WL 739943, at

---

[2] Prior to the 2011 amendments to the New York Labor Law, liquidated damages were imposed at the rate of 25% of unpaid wages. See N.Y. Labor Law § 198(1-a) (2009).

*10 (E.D.N.Y. 2015).  Again, the defendant's default establishes willfulness.  Since minimum wages were determined above according to the higher of the applicable New York and federal rate, below are the calculations based solely on the New York minimum wage.

| Time Period | NY Minimum Wage Rate | Hours Worked Per Day | Days Worked In Period | Total |
|-------------|----------------------|----------------------|-----------------------|-------|
| 1/8/1998–3/30/2000 | $4.25 | 14 | 813 | $ 48,373.50 |
| 3/31/2000–12/31/2004 | $5.15 | 14 | 1737 | 125,237.70 |
| 1/1/2005–12/31/2005 | $6.00 | 14 | 365 | 30,660.00 |
| 1/1/2006–12/31/2006 | $6.75 | 14 | 365 | 34,492.50 |
| 1/1/2007–1/8/2008 | $7.15 | 14 | 373 | 37,337.30 |
|  |  |  |  | $276,101.00 |

Thus, I recommend that this Court award liquidated damages under the New York Labor Law in the amount of $92,937.57 ($276,101 + 75,927.78 + 19,721.50) * 25%.

   F.   RICO Trebling

   Plaintiff is also entitled to treble damages under RICO to the extent her RICO claim is not preempted by the FLSA.  See 18 U.S.C. § 1964(c).  Plaintiff seeks trebling of the amount sought for unpaid minimum wages, overtime wages, spread of hours pay, and liquidated damages under both the FLSA and New York Labor Law.  As discussed above, plaintiff cannot seek RICO damages for amounts recoverable under the FLSA.  Moreover, liquidated damages under New York law "'constitute a penalty,' to deter an employer's willful withholding of wages due." Reilly, 181 F.3d at 265.  Thus, liquidated damages awarded under New York law are not a part of plaintiff's compensatory damages and should not be trebled under

-38-

RICO.  Accordingly, I recommend awarding plaintiff $191,298.56 in treble damages ($75,927.78 + $19,721.50) x 2).

G.   Prejudgment Interest

Plaintiff also seeks prejudgment interest on her damages from the date her employment ended through the date of judgment. Federal courts have long recognized that prejudgment interest may not be awarded in addition to liquidated damages for violations of the FLSA.  Thomas v. iStar Fin., Inc., 652 F.3d 141, 150 n.7 (2d Cir. 2011); Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988) (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 714-16 (1945)).  Since liquidated damages awarded under the FLSA for unpaid wages is designed to compensate employees for delays in payment, such damages are the functional equivalent of prejudgment interest and are thus barred.

However, the Second Circuit has also held that "[p]re-judgment interest and liquidated damages under the Labor Law are not functional equivalents" and thus may both be awarded for violations of state wage laws.  Reilly, 181 F.3d at 265.  As the Reilly court explained, "prejudgment interest" is meant "to compensate a plaintiff for the loss of use money," while, as discussed above, "liquidated damages under the Labor Law 'constitute a penalty.'" Id. (citations omitted).

Nevertheless, where, as here, treble damages under RICO in addition to liquidated damages under the New York Labor Law are adequate to compensate plaintiff, an award of pre-judgment interest would generally be inappropriate.  TWA, 449 F.2d at 80; Panix

-39-

Prods., 2003 WL 21659370, at *3; Group III Capital, Inc. v. Parasol
Group, Ltd., 2003 WL 1948801, at *3 (S.D.N.Y. 2003); Securitron
Magnalock Corp. v. Schnabolk, 1994 WL 576897, at *1 (S.D.N.Y.
1994), aff'd, 65 F.3d 256 (2d Cir. 1995).  Therefore, I recommend
denying plaintiff's request for pre-judgment interest.

    H.    Offset

    In RICO cases, when a plaintiff settles with one defendant,
the non-settling defendants are "entitled to a credit of the
settlement amount against any judgment obtained by the plaintiff
against the nonsettling defendant as long as both the settlement
and judgment represent common damages."  Singer v. Olympia Brewing
Co., 878 F.2d 596, 600 (2d Cir. 1989); see In re Masters Mates &
Pilots Pension Plan, 957 F.2d 1020, 1031 (2d Cir. 1992).  The
Second Circuit has applied a "one satisfaction rule" rather than a
"proportionate responsibility rule" in such cases, affording a non-
settling defendant a reduction equal to the amount of a prior
settlement.  Singer, 878 F.2d at 600; see also Gerber v. MTC Elec.
Techs. Co., Ltd., 329 F.3d 297, 303 (2d Cir. 2003); Bank Brussels
Lambert v. Credit Lyonnais (Suisse) S.A., 2000 WL 1364272, at *2-*3
(S.D.N.Y. 2000).  Application of the one satisfaction rule is
particularly appropriate here since Kyung Bok has wilfully
defaulted and impeded determination of liability and comparative
culpability.  See Qualis Care, L.P. v. Hall, 1999 WL 683564, at *8
n.6 (S.D.N.Y. 1999); In re Crazy Eddie Sec. Litig., 948 F. Supp.
1154, 1169 (E.D.N.Y. 1996).  Therefore, recovery on the award
recommended must be offset against the settlements to be paid by

other defendants.[3]

IV. <u>Sanctions</u>

In addition to the $2,896,282.76 in default judgment damages sought by plaintiff, she seeks $1,590 in costs and fees ($520 of which was previously imposed) in connection with Kyung Bok's failure to appear for two depositions. <u>See</u> ct. doc. 145 at 3. As discussed above, by order dated November 21, 2012, this Court imposed sanctions on defendants Kyung Bok, Young Mi and Young Jin in the amount of $520 each. It appears that $1,000 of the $1,560 in sanctions was paid to plaintiff's counsel by Soo Bok, who had undertaken the responsibility to pay those sanctions. <u>See</u> ct. docs. 66 at 3, 105 at 9. Since it is not clear as to which defendants the $1,000 was intended to apply, I recommend crediting $333.33 or one-third to Kyung Bok, leaving an outstanding balance of $186.67 in connection with his failure to appear for a deposition scheduled for November 12, 2012.

In addition, by letters dated February 27, 2013 and April 5, 2013, plaintiff moved for fees in connection with Kyung Bok's failure to appear for a deposition scheduled for February 11, 2013, in the amount of $750 for the time of two attorneys who waited for Kyung Bok to appear, and costs in the amount of $520. <u>See</u> ct.

---

[3] Courts have upheld the trebling of damages before crediting settlement payments. <u>See</u> <u>Singer</u>, 878 F.2d at 601 (where plaintiff settles with one or more of defendants, and then prevails against the remaining defendants, "it is proper to treble the damage award before crediting settlement payments"); <u>Auwood v. Harry Brandt Booking Office, Inc.</u>, 850 F.2d 884, 894 (2d Cir. 1988); <u>New York v. Hendrickson Brothers, Inc.</u>, 840 F.2d 1065, 1086 (2d Cir. 1988).

docs. 65, 66.  Plaintiff's request for fees is denied.  Plaintiff does not explain why it was necessary for two attorneys to bill for one hour each in waiting for Kyung Bok to appear for his deposition.  However, plaintiff's request for $520 in costs incurred is granted.  Thus, the Court recommends that $706.67 in sanctions be added to the judgment against Kyung Bok Choi.

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that plaintiff be awarded damages against defendant Kyung Bok Choi in the amount of $933,345.31, for the following categories of damages.

| | |
|---|---:|
| Unpaid Minimum Wages | $286,344.80 |
| Unpaid Overtime Wages | 75,927.78 |
| Spread of Hours Premium | 19,721.50 |
| FLSA Liquidated Damages | 267,115.10 |
| NY Liquidated Damages | 92,937.57 |
| FLSA Treble Damages | 191,298.56 |
| **Total** | **$933,345.31** |

I further recommend that sanctions in the amount of $706.67 be added to the judgment, for a total judgment of $934,051.98.  In collecting on this judgment, plaintiff must set off any amount received by plaintiff from the other defendants.

This report and recommendation will be filed electronically and a copy mailed to the last known address for Kyung Bok Choi on this date.  Counsel for defendants Soo Bok Choi, Young Il Choi and Young Jin Choi is respectfully requested to mail a copy of this

report and recommendation to his clients in the event that they are in contact with Kyung Bok Choi.  Any objections must be filed, with a courtesy copy sent to the Honorable Dora L. Irizarry by March 17, 2016.  Failure to file objections within the specified time waives the right to appeal.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

   **SO ORDERED.**

Dated:  Brooklyn, New York
     February 29, 2016

       /s/_____
       MARILYN D. GO
       UNITED STATES MAGISTRATE JUDGE